A05A1012. GROPPER et al. v. STO CORPORATION et al.

(623 SE2d 175)

SMITH, Presiding Judge.

This appeal arises out of the trial court's order striking and dismissing the plaintiffs' complaint for wilful failure to respond to discovery. Because the record supports the sanction, we find no abuse of the trial court's discretion. We therefore affirm.

This is the second appearance of this case here. As more fully set out in *Gropper v. STO Corp.*, 250 Ga. App. 820 (552 SE2d 118) (2001), plaintiffs Gary and Vicki Gropper, on behalf of themselves and their children, sought redress against three defendants for property damage and personal injuries allegedly arising out of the unauthorized substitution of a synthetic stucco product during the construction of their home. Id. They contended that defects described in their complaint resulted in water infiltration, which in turn damaged their home and caused personal injuries through the growth and release of "hazardous [biological] contaminants and chemicals into the indoor environment." Numerous cross-claims and third-party claims were filed as well. Id. at 820-821. In the previous appeal, this court affirmed in part and reversed in part the trial court's grant of partial summary judgment and summary judgment. Following this court's July 2001 decision, several claims remained pending.

1. The issues addressed in this appeal involve the Groppers' pattern of failing to respond efficiently and timely to discovery requests made by the defendants. In July 2003, defendant Renaissance Building Corporation filed a motion for entry of a case management and scheduling order. Renaissance sought an order setting forth discovery deadlines, particularly a date by which the Groppers

"be required to revisit, update and restate their answers to previously served discovery." Renaissance noted that the plaintiffs' previous discovery responses were "outdated and so absurdly overbroad as to make some of them virtually meaningless" and that the Groppers should "be required to narrow and more properly shape their prior responses." It appears that the initial discovery responses had been provided only after the trial court compelled response and imposed sanctions on the Groppers.

In December 2003, the trial court entered a scheduling order setting a trial date and deadlines for discovery, motions, and identification of expert witnesses. The order also required the parties to submit monthly status reports concerning the status of discovery. It provided further that deadline extensions could be granted only by court order and that any motion filed late without such an order would be deemed untimely and would not be considered.

On February 6, 2004, the trial court conducted a status conference. The transcript of that conference shows that the Groppers' interrogatory responses were not yet complete and that their counsel had not provided a status report as required by the trial court. Counsel for Renaissance stated that he had received 185 pages of interrogatory responses. He provided examples of irrelevant and lengthy responses to interrogatories and document requests and stated, "We shouldn't have to march through discovery responses to try to figure out what is buried as relevant information."[1] Renaissance also noted that the Groppers had not complied with the trial court's previous direction to them to produce medical records. Counsel for Evans Plastering, one of the other defendants, pointed out that interrogatories had been served on the plaintiffs on October 31, 2003, that an extension had been granted until December 16, and that as of the date of the status conference, no response had been received.

Also on February 6, the trial court entered a written order requiring the Groppers to "re-cast and succinctly and directly respond to" Renaissance's interrogatory supplementation request and to provide answers to the other defendant's interrogatories within seven days of the order. The order further required the Groppers to provide responses to pending document requests by furnishing within 14 days of the order "a categorized, organized and indexed written response of all responsive documents." Finally, the order recited,

---

[1] It appears that in response to document requests, the Groppers produced many returned checks, including checks to private schools and a museum, and "stacks and stacks of receipts from pharmacies." Counsel for Renaissance stated, "There is no way for us to tell just by being given a production which of those documents is relevant to anything." When asked by the trial court if he had "grocery bags full of stuff," the Groppers' counsel answered that he had "a hamper . . . full of checks and credit card bills."

"Failure to comply with this order will result in the plaintiff's complaint being stricken and the case dismissed."

On February 27, following both deadlines set by the court in its February 6 order, counsel for Evans Plastering sent the trial court a lengthy letter detailing numerous deficiencies in the Groppers' interrogatory responses. Also on February 27, the Groppers' counsel provided a written status report in which he admitted that he failed to meet the terms of the February 6 order relating to document production, blaming in part a computer problem. He stated further that he had been informed by the court's judicial assistant that if he wanted permission to delay the February 20 document response date, a formal motion was needed. Counsel did not file a motion. He "instead went ahead and filed responses to all the document requests, by the [February 20] deadline," and he "had to supplement the responses to add the parts of the indexes that could not be provided." He added that he had since faxed those indexes to counsel.

The record also shows that two days past the deadline for identifying experts, the Groppers served on Renaissance a twenty-eight-page document disclosing more than fifty individuals or entities, and counsel also filed a motion for additional time to designate additional experts at an undetermined date. It appears that some of the listed individuals had not yet examined all the Groppers. Another group of purported experts included individuals who may not have seen the property at issue. We note that with respect to one of the listed "experts," the disclosure recites, "We do not know what, if anything, they did."

The defendants filed a joint motion for sanctions based on the Groppers' failure to comply with the February 6 order. In response, Vicki Gropper and her trial counsel filed affidavits providing numerous excuses for the failure to comply with the trial court's order. These included: loss or destruction of documents due to mold contamination; the sale of the Groppers' property; the death of Vicki Gropper's mother; Vicki Gropper's diagnoses of insulin resistance, hypoglycemia, allergies to food and migraine medicine, chronic fatigue syndrome, and hormonal imbalance; and Vicki Gropper's struggles with dyslexia.

The trial court conducted a hearing on the defendants' motion for sanctions. Counsel for Renaissance argued that "the purposes of discovery are not being met in this case. We are not narrowing issues for trial. If anything, we keep introducing new and additional issues as time goes on." He added that he did not yet "have the information I need to take the depositions because we're not getting appropriate discovery responses and appropriate help from the plaintiffs."

In response, the Groppers' counsel again provided numerous excuses for his failure to meet deadlines. He also gave various reasons

for his lengthy list of expert witnesses. At the conclusion of the hearing, the trial judge stated that he found "a willful failure to abide by" the February 6 order and that "based on the history of the case and what has transpired since this case was filed in 1999," he was exercising his discretion to dismiss the case. The court entered a written order granting the motion, striking the complaint, and dismissing the action. After retaining new counsel, the Groppers appeal, arguing in large part that they substantially complied with the trial court's order and that any noncompliance was not wilful.

Trial courts have wide latitude in the management of discovery. As stated in *Butler v. Biven Software*, 238 Ga. App. 525 (522 SE2d 1) (1999),

> Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion. This policy is peculiarly applicable in the context of allegations of discovery abuse.

(Citation and punctuation omitted.) Id. at 527 (2). "Historically, it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse." (Citation and punctuation omitted.) *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210, 215 (3) (480 SE2d 604) (1997). Under OCGA § 9-11-37 (b) (2) (C), one sanction available to a trial court is that of dismissal of an action for failure to comply with a discovery order. Before exercising its discretion to impose this harsh sanction, a trial court must find that the offending party acted wilfully. *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182 (402 SE2d 723) (1991). "The sanction of dismissal for failure to comply with discovery provisions of the Civil Practice Act requires only a conscious or intentional failure to act, as distinguished from an accidental or involuntary non-compliance. A conscious or intentional failure to act is in fact wilful." (Citations and punctuation omitted.) *Loftin*, supra, 224 Ga. App. at 215. And "[a] party who intentionally fails to comply fully with a court order may be subject to the harshest of sanctions. [Cit.]" *Butler*, supra, 238 Ga. App. at 528 (2). In determining whether a party wilfully failed to comply with discovery, the trial court is "the trier of fact and its finding of wilfulness from the evidence presented will not be reversed where there is any evidence to support it." (Citation and punctuation omitted.) Id. at 527.

This case does not involve an isolated failure to comply with discovery requests. The record here illustrates a pattern of violation of discovery rules, explicit direction by the court, and written orders

of the court. As discussed above, the Groppers were previously sanctioned for failure to respond to discovery requests. They failed to provide all monthly status reports as required by the trial court. At times they failed to respond to discovery requests and on the occasions that they did respond, they consistently provided late, overbroad, and irrelevant answers and documents. Following the trial court's specific and emphatic February 6 order, they failed to meet deadlines set by the court, failed to respond to all written discovery, and failed to file a motion for an extension of time to respond in spite of explicit instructions. We agree with the appellees that the Groppers engaged in "a pattern of discovery abuse much broader than mere 'inadequate responses' to written discovery. Numerous times [they] inexcusably and completely failed to respond to discovery within the requisite deadlines, and in violation of the Georgia Civil Practice Act and/or the court's orders."

Although the sanction of dismissal is severe, we cannot conclude that the trial court abused its discretion in this case. See *Sheppard v. Johnson*, 255 Ga. App. 165 (564 SE2d 729) (2002). Unlike the record in *Montani v. Wallace Enterprises*, 251 Ga. App. 384 (554 SE2d 539) (2001), cited by the Groppers, which showed an accidental failure to comply with an order concerning document production, the record here supports the trial court's finding of wilful failure to respond to discovery. As stated in *Deep South Constr. v. Slack*, 248 Ga. App. 183 (546 SE2d 302) (2001), "Plaintiffs who file lawsuits and put defendants to the expense and trouble to answer should at least prosecute their actions efficiently and diligently; the Civil Practice Act authorizes dismissal in a case like this." (Citation and punctuation omitted.) Id. at 187 (3).

2. Relying on *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206 (538 SE2d 441) (2000), the Groppers argue that the trial court's February 6 order was an impermissible "self-executing order." The Georgia Supreme Court in *Tenet Healthcare* stated that

> a court cannot assume that a future failure to comply with discovery orders will be unjustifiable. It must examine the circumstances retrospectively. This means affording an opportunity to explain the circumstances following the failure; which means, in turn, an express motion and notice to the party concerned. [Cit.]

Id. at 211 (3). In *Tenet Healthcare*, the trial court issued an order on a motion to compel giving the plaintiff ten days to comply or suffer dismissal of the complaint. Id. at 212. Because the order did not condition dismissal on the filing of a formal motion and "the passage of the concomitant 'opportunity to be heard,'" the Supreme Court

found the order to be "an impermissible prospective, self-executing order of dismissal. [Cits.]" Id.

The facts of this case are similar to those in *Tenet Healthcare*, as the trial court's February 6 order did not make "the parties aware that an additional step would have to be taken before the sanction [of dismissal] would be effective. [Cit.]" Id. The order did not require the defendants to file a motion and did not inform the Groppers that they would have an opportunity to explain any delays or deficiencies. Nevertheless, the defendants *did* file a formal motion for sanctions, the trial court *did* conduct a hearing on the motion, and the Groppers' counsel *did* have opportunity to be heard on the issue of the Groppers' failure to comply with the court's February 6 order. Reversal requires a showing of harm as well as error, *Lloyd v. Hardman*, 261 Ga. App. 894 (2) (583 SE2d 925) (2003), and we cannot conclude in this case that the Groppers suffered harm by virtue of the language in the February 6 order.

3. The Groppers contend that the trial court abused its discretion in ruling on the defendants' motion for sanctions "brought without an adequate prior good faith conferral" required by Uniform Superior Court Rule (USCR) 6.4. Under that rule, "counsel for the party moving to compel must certify that he has conferred with opposing counsel in an effort to resolve the matter. [Cit.]" *Lykins v. Nationwide Mut. Ins. Co.*, 214 Ga. App. 577, 580 (4) (448 SE2d 716) (1994). The record here shows that before the trial court entered the February 6 order, Renaissance sent at least three letters to the Groppers' counsel in an attempt to resolve discovery disputes related to the Groppers' interrogatories and to a set of document requests. The attorneys also had "at least one, if not more, conversations" concerning these disputes, and Renaissance "received no substantive response to" its letters. The December 19, 2003 status conference and the February 6, 2004 hearing and scheduling order ensued.

The Groppers argue that dismissal is unauthorized because no further attempts at resolution were undertaken before the defendants filed their motion for sanctions. We do not agree. "[T]here is no requirement in [USCR 6.4] that counsel for the movant make more than one attempt to resolve the discovery matter." (Citation and punctuation omitted.) *Deep South*, supra, 248 Ga. App. at 185-186 (1). Here, as in *Deep South*, the record shows the existence of "numerous attempts to satisfy the requirements of the rule." Id. at 186 (1).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 8, 2005.

*Gorby, Reeves & Peters, Michael J. Gorby, Mary D. Peters, Barry C. Edwards, Adam H. Long*, for appellants.

*Womble, Carlyle, Sandridge & Rice, Jonathan B. Mason, John A. Thomson, Jr., Swift, Currie, McGhee & Hiers, Stephen M. Schatz, Melissa K. Kahren, Pursley, Lowery & Meeks, John C. Amabile*, for appellees.