A07A2404. THOMAS et al. v. PEACHTREE ORTHOPAEDIC CLINIC, P.C. et al.
(660 SE2d 758)

RUFFIN, Judge.

Ronnie and Lynette Thomas appeal from the trial court's grant of summary judgment to Peachtree Orthopaedic Clinic, P.C. and Ashok S. Reddy, M.D. (collectively, "Peachtree Orthopaedic") in this medical

---

malpractice action. The Thomases also contend that the trial court erred in excluding one of their expert witnesses and challenge the trial court's failure to reserve ruling on certain motions until after the judge presiding over their bankruptcy case approved a new attorney for them. For reasons that follow, we affirm.

A review of the protracted procedural history of this case shows that the Thomases filed their initial malpractice complaint against Peachtree Orthopaedic on March 24, 2004. They dismissed the first complaint without prejudice on November 24, 2004, and re-filed that lawsuit on May 18, 2005. On April 20, 2006, the trial court entered a notice scheduling the trial for May 22, 2006. The parties then filed a joint motion for continuance, which the trial court granted, placing the case on an August 2006 trial calendar.

Thereafter, the parties submitted a joint proposed "Case Management Order" in which they self-imposed numerous deadlines, and the trial court entered the order on July 12, 2006. The order, which was consented to by the parties, specifically cautioned that

> [t]he parties are to immediately notify the Court via telephone of any problem or dispute (disagreements about discovery, scheduling difficulties, the unavailability of a witness, illness, the late addition of parties or claims, etc.) that could delay the deadlines or hearing dates that may be set forth herein. Modification of any deadline or hearing date contained herein requires approval of the Court — even if all parties consent to the change. Requests that the Court extend a deadline or hearing date should be made as early as the need becomes apparent. Failure to abide by this Case Management Order may result in a dismissal or default judgment.

The order provided that discovery would be completed by October 20, 2006. The plaintiffs were required to identify *all* expert witnesses on or before June 15, 2006. The order also required that any dispositive and/or *Daubert* motions be filed no later than November 20, 2006 and that the plaintiffs' responses thereto be filed no later than December 20, 2006. The parties were required to submit a proposed pretrial order no later than December 22, 2006, and the trial was then specially set for January 22, 2007.

On June 15, 2006, the Thomases identified Ronald Kendrick, M.D. as their sole expert for trial. On October 11, 2006, the Thomases' attorneys, Adam S. Jaffe and Lynley R. Rothstein — the Thomases' third set of attorneys — filed a motion to withdraw, citing "an impasse of case strategy."

On November 20, 2006, Peachtree Orthopaedic filed a motion for summary judgment and a motion to exclude Dr. Kendrick's testimony, arguing that he was not qualified to render expert testimony pursuant to OCGA § 24-9-67.1. On December 10, 2006, attorneys Thomas Venker and Andrew Kirschner filed a motion to amend the case management order on behalf of the Thomases, requesting time to identify an additional rebuttal expert witness under OCGA § 9-11-56 (f) and seeking additional time to respond to Peachtree Orthopaedic's motion for summary judgment. They also moved for "the allowance of conditional substitution of new counsel," and in support thereof, Venker filed an affidavit stating that he and Kirschner "would want a different expert for the [p]laintiffs if [they] were going to be counsel in the case and . . . would only enter the case if they could find another expert." Venker specifically stated that his firm was only

> willing to represent the [p]laintiffs and invest the time and money necessary to provide for their proper representation if the [trial court] [would] grant the [p]laintiffs' motion to reopen discovery through May of 2007 and allow the [p]laintiffs until January 22, 2007 or bankruptcy approval of their hiring, whichever is later, to further respond to the [d]efendants' motion for summary judgment.

Then, on December 20, 2006, Jaffe and Rothstein filed an amended motion to withdraw, stating that they had "come to an *absolute* impasse in regards to case strategy" and indicating that their continued representation of the Thomases would violate the Georgia Rules of Professional Conduct.

On December 22, 2006, Peachtree Orthopaedic sent a proposed consolidated pretrial order to the trial court, along with a cover letter explaining that the Thomases had just identified a new expert witness and expected him to be included in the pretrial order.[1] Peachtree Orthopaedic objected to the addition of the new expert and specifically excluded him from the consolidated pretrial order submitted to the trial court.

On December 27, 2006, Jaffe and Rothstein filed a response to the summary judgment motion on behalf of the Thomases. On January 10, 2007, Jaffe and Rothstein filed supplemental responses to discovery in which they identified Dr. Lippman as an expert witness. On the same day, the trial court signed and filed the pretrial

---

[1] When the Thomases sent their final draft of the proposed pretrial order to Peachtree Orthopaedic – wherein they identified Dr. Lippman as a witness for the first time – they characterized their changes as "slight modifications."

order submitted by Peachtree Orthopaedic, which did not include Dr. Lippman as a witness for the plaintiffs.

Following oral argument, the trial court entered two written orders. The first struck all pleadings filed by Venker and Kirschner, concluding that they did not properly represent the Thomases based upon their failure to comply with Uniform Superior Court Rules 4.2 and 4.3. The second order (1) granted Peachtree Orthopaedic's motion to strike the affidavit of Dr. Kendrick; (2) granted Peachtree Orthopaedic's motion for summary judgment; (3) specifically excluded from consideration the Thomases' supplemental response to the summary judgment motion, including their identification of Dr. Lippman as an expert witness; and (4) denied the motion to withdraw filed by Jaffe and Rothstein.

1. The Thomases contend that the trial court erred in excluding the testimony of one of their experts, Dr. Lippman. We disagree.

" 'Trial courts have broad discretion to control discovery, including the imposition of sanctions. Absent the showing of a clear abuse of discretion, a court's exercise of that broad discretion will not be reversed.' "[2] " 'This policy is peculiarly applicable in the context of allegations of discovery abuse.' "[3]

Here, after agreeing to continue the first scheduled trial in this case, the trial court entered a case management order that contained deadlines *selected and consented to by the Thomases* and Peachtree Orthopaedic. Among other deadlines, the Thomases agreed to identify all expert witnesses no later than June 15, 2006, to respond to any dispositive motions filed by the defendants by December 20, 2006, and to begin the trial on January 22, 2007. Notwithstanding their agreement, and in violation of the case management order, the Thomases amended their discovery responses and identified Dr. Lippman as an expert on January 10, 2007, which was more than six months after the deadline to do so, fourteen days after their deadline for filing a response to the summary judgment motion,[4] two days before the summary judgment oral argument, and less than two weeks before the trial was scheduled to begin.

Clearly, the trial court intended to manage the discovery and duration of this case, which it was entitled to do.[5] More importantly, however, the Thomases specifically selected and consented to the deadlines set forth in the case management order. "A litigant cannot

---

[2] *Russaw v. Burden*, 272 Ga. App. 632, 634 (2) (a) (612 SE2d 913) (2005).

[3] *Gropper v. STO Corp.*, 276 Ga. App. 272, 275 (1) (623 SE2d 175) (2005).

[4] Although the case management order required them to file responses to the summary judgment motion by December 20, 2006, the trial court extended the deadline through December 27, 2006 at the request of the Thomases' counsel.

[5] See *Gropper*, supra.

submit to a ruling, acquiesce in the ruling, and still complain of same. . . . Acquiescence completely deprives it of the right to complain further; it has agreed that the trial court's ruling was correct by submitting to it."[6] Thus, the Thomases' agreement to abide by the deadlines they proposed precludes our consideration of this issue.[7]

The Thomases also seem to argue that the trial court was required to permit the testimony of Dr. Lippman — notwithstanding their failure to timely identify him in accordance with the case management order — simply because he was offered in opposition to the summary judgment motion pursuant to OCGA § 9-11-56 (c). But they do not show that they made this argument to the trial court.[8] " 'We do not consider arguments neither raised nor ruled on by the court below and that are asserted for the first time on appeal.' "[9] Thus, the Thomases' apparent failure to raise this argument before the trial court precludes our review.[10]

Further, the Thomases have provided no authority for their contention that a party's right to serve affidavits in opposition to a summary judgment motion pursuant to OCGA § 9-11-56 (c) entitles them to use an expert that was not timely identified or for whom they did not obtain leave of court to present. Moreover, given the trial court's exclusion of Dr. Kendrick — which the Thomases do not challenge on appeal — Dr. Lippman was their *only* expert witness. Under these circumstances, we find their argument that he should have been admitted as a rebuttal witness unpersuasive.

Under the particular circumstances of this case, we find no abuse of discretion in the trial court's refusal to permit the testimony of Dr. Lippman.[11]

2. The Thomases further contend that the trial court erred in granting summary judgment to Peachtree Orthopaedic. At the outset, we note that although they allege a separate enumeration on this issue, the Thomases have improperly combined this argument with their argument that the trial court erred in excluding Dr. Lippman, in violation of this court's rules.[12] Notwithstanding this violation, we

---

[6] (Punctuation omitted.) *Constructamax, Inc. v. Andy Bland Constr., Inc.*, 280 Ga. App. 403, 406 (2) (634 SE2d 168) (2006).

[7] See id.

[8] And "[i]t is well settled that this Court will not cull the record . . . on an appellant's behalf." *Carlisle v. Abend*, 288 Ga. App. 150, 151 (1) (653 SE2d 388) (2007).

[9] *Tharp v. Vesta Holdings I, LLC*, 276 Ga. App. 901, 906 (2) (625 SE2d 46) (2005).

[10] See id.

[11] See id.

[12] See Court of Appeals Rule 25 (c) (1), which mandates that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."

will attempt to address their arguments insofar as possible given the limitations of their brief.

The Thomases' sole argument to support their contention that the trial court erred in granting summary judgment is that there were "contested issues of fact caused by the testimony of Dr. Lippman." As set forth in Division 1, however, the trial court did not abuse its discretion in excluding Dr. Lippman. Thus, in the absence of any additional argument, the Thomases have not shown error in the trial court's grant of summary judgment.

We also note that given the exclusion of Dr. Kendrick and Dr. Lippman, the Thomases failed to meet their burden to provide expert testimony that the defendants breached their duty of care and that this failure proximately caused Mr. Thomas's injury.[13] Thus, we find no error in the trial court's grant of summary judgment to Peachtree Orthopaedic.[14]

3. The Thomases also allege that the trial court erred in failing to continue the hearing and to reserve ruling on certain motions until after the bankruptcy court presiding over the Thomases' Chapter 13 bankruptcy case[15] "could approve[ ] an attorney to represent the bankruptcy estate in this case under a [b]ankruptcy [c]ourt approved fee arrangement."[16] We disagree.

According to the Thomases, the bankruptcy estate "owned" their malpractice case.[17] Certainly, their interest in their lawsuit against the defendants was "personal property included as part of the bankrupt estate."[18] However, as the Thomases "filed under Chapter 13 of the Bankruptcy Code, [they] retain[ed] standing to pursue legal

---

[13] See *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003) ("In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson."); *Beach v. Lipham*, 276 Ga. 302, 304 (1) (578 SE2d 402) (2003).

[14] See *Zwiren*, supra.

[15] The Thomases filed a Chapter 13 bankruptcy petition on October 1, 2006.

[16] Specifically, the Thomases assert that the trial court should have reserved ruling on Peachtree Orthopaedic's motion for summary judgment and motion to exclude Dr. Kendrick and on the Thomases' request to file affidavits in response to the summary judgment motion.

[17] To support their argument, the Thomases cite to a nonbinding and nonpersuasive bankruptcy court decision from New Jersey, *In re Bowker*, 245 BR 192 (Bankr. D. N.J. 2000). They recite the New Jersey court's statement that courts that have decided the issue of Chapter 13 debtors' standing to sue as representatives of the bankruptcy estate have reached three distinct conclusions. Id. at 194. Tellingly, the Thomases omit the holding of the case – which is adverse to their position – that "it is the debtor alone who has the authority to retain special counsel and pursue a cause of action that is property of the chapter 13 bankruptcy estate." Id. We find this omission misleading and thus, inappropriate.

[18] (Punctuation omitted.) *Nat. Bldg. Maintenance Specialists v. Hayes*, 288 Ga. App. 25, 26 (653 SE2d 772) (2007); see 11 USC §§ 1306 (a); 541 (a).

claims on behalf of the estate," because "[i]n Chapter 13 cases where the debtor is the party plaintiff, . . . the debtor controls the litigation."[19] Thus, although the Thomases may have been required to obtain the bankruptcy court's approval of a fee arrangement with counsel, there is no requirement that the trial court must stay the litigation while they do so.

The Thomases have cited no authority for their position that their decision to retain their fourth set of attorneys for this lawsuit and/or their action in filing a bankruptcy petition somehow divested the trial court of its authority to control the litigation. And this argument is particularly unavailing under the circumstances of this case.[20] Thus, we find no error in the trial court's denial of the Thomases' request to stay the litigation.[21]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

---

DECIDED MARCH 10, 2008 —
RECONSIDERATION DENIED APRIL 9, 2008 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Kirschner & Venker, Andrew R. Kirschner, Thomas J. Venker, Lawrence B. Schlachter*, for appellants.
*Greenberg Traurig, Lori G. Cohen, Darcy F. Coty*, for appellees.

---

[19] (Punctuation omitted.) *Crosby v. Monroe County*, 394 F3d 1328, 1331, n. 2 (11th Cir. 2004).

[20] Indeed, Venker and Kirschner did not petition the bankruptcy court for approval of their employment until February 23, 2007, more than five weeks after the oral argument at which the trial court verbally ruled on the pending motions.

[21] See id.