## A09A0862. ANDERSON v. SILVER et al.

(684 SE2d 73)

ADAMS, Judge.

Phyllis Anderson filed suit against Jonathan and Juli Silver arising out of a contract between the parties for co-ownership of a dog that allegedly has a prize-winning pedigree. Discovery disputes arose, and eventually, the court dismissed Anderson's complaint for twice failing to comply with court orders compelling her to respond to the Silvers' discovery requests. Anderson appeals.

The appellate courts "will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." (Citations and punctuation omitted.) *Ford Motor Co. v. Gibson*, 283 Ga. 398, 401 (1) (659 SE2d 346) (2008). See also *Gropper v. STO Corp.*, 276 Ga. App. 272, 275 (1) (623 SE2d 175) (2005). We conclude there was one in this case.

The record shows that since 1969, Anderson has bred Norwegian Elkhound dogs under the trade name "Trolan Norwegian Elkhounds" and that in December 2005, a litter was produced that included a female whom Anderson formally named "Trolan's Stars and Stripes Forever" but informally named "Delilah." That month the Silvers contacted Anderson about purchasing a female dog, and Anderson explained that she was intending to breed and show Delilah in the future. Eventually, the parties agreed to a co-ownership agreement that, in essence, would allow the Silvers to have the dog as a pet but still allow Anderson to breed and show the dog. On March 4, 2006, the parties entered into a one-page "Sales Contract" to document the

agreement. The key language of the contract provides:

> Puppy to be co-owned by TROLAN and The Silver Family. Puppy to reside with Silvers (except for show/breeding) and expenses paid by Silvers. At the end of show and breeding career, puppy is to be spayed and TROLAN will sign off as owner. TROLAN retains show/breeding rights — sold at pet price to offset expenses.

The Silvers acknowledge that they received a reduced price for the dog in exchange for the co-ownership agreement.

The parties dispute what happened next. According to Anderson, the Silvers refused to allow her access to the dog for breeding and showing the dog. According to the Silvers, Anderson waived her rights to show and breed the dog because she "would not respond to our requests that she show or breed the dog so we could fulfill our obligations." In September 2006, the parties had to enter into an additional agreement to sort out the details surrounding the delivery and pick-up of the dog for just one set of shows held one weekend. According to Anderson, the Silvers only allowed the dog to be shown one other time and they wanted her to breed the dog promptly so that it could be spayed thereafter. The parties hit an impasse, and eventually the Silvers indicated that they intended to spay the dog.

On June 6, 2008, Anderson filed a complaint seeking a temporary restraining order and injunctive relief. On June 11, the trial court granted the TRO and prohibited the Silvers from physically altering the dog. On July 7, the parties entered into a temporary consent order to run through October 12, 2008. That order provided the terms under which Anderson could obtain possession of the dog for showing and breeding and further provided that the Silvers would not spay the dog.

On July 18, 2008, the Silvers answered the complaint and filed a counterclaim. In their counterclaim, the Silvers sought a declaratory judgment regarding the relative rights and responsibilities of the parties under the co-ownership agreement, including who was responsible for the expenses of showing and breeding the dog. They also asserted that Anderson defrauded them into entering into the agreement by misrepresenting who was responsible for expenses, how long the agreement would last, and when the dog would be bred. The Silvers also claimed breach of contract along the same lines.

On August 1, Anderson amended her complaint and, in addition to the request for declaratory relief, added claims of breach of contract, fraud, promissory estoppel, and quantum meruit in connection with the Silvers' alleged actions in connection with the

co-ownership agreement. She also filed a motion to extend the effect of the consent order. Anderson asserted that the dog is a "unique, special, and irreplaceable dog with internationally-recognized lineage." As a result, "damages would be exceptionally difficult to calculate. . . ."

Meanwhile, on July 18, the Silvers had served their first interrogatories and requests for production of documents. On August 20, 2008, the parties stipulated that Anderson would respond to the Silvers' discovery requests by August 28, 2008. On August 29, Anderson served a Uniform Superior Court Rule 5.2 certificate indicating that responses were served that day. On September 8, 2008, Anderson served another Rule 5.2 certificate indicating that "amended and supplementary" responses were served that day.

At the September 18, 2008 hearing held on Anderson's motion to continue the temporary consent order, the Silvers made two oral motions to compel. The Silvers' own statements show that one dealt with "co-ownership agreements with other clients" and the other dealt with "an official AKC pedigree for the dog." As is shown in the subsequent written order, the court ordered Anderson to produce the first category of items by September 29 and the second category by October 20. It is only the first category — customer information — that is at issue here.

Although the Silvers' discovery requests are not in the record, the court's subsequent written order granting the motions quotes three requests. They are:

> *Interrogatory No. 16*: Identify all parties with whom you have entered into any type of co-ownership agreement. The relevant time period for this interrogatory is from the beginning of your career as a breeder of canines of any breed.
> *Document Request No. 9*: Please produce all documents or things that evidence, constitute, refer or relate to the pedigree of Delilah.
> *Document Request No. 11*: Please produce all documents or things that evidence, constitute, refer or relate to any other co-ownership agreements with persons other than Defendants. The relevant time period for this Request is from the beginning of your career as a breeder of any breed of canines.

After reciting these discovery requests, however, the trial court stated "Defendants seek information and documents from Plaintiff regarding *all prior customers* with whom Plaintiff has entered into a co-ownership agreement, and Defendants seek an official pedigree

from the American Kennel Club." (Emphasis supplied.) The order instructs Anderson to "fully respond to the above-referenced discovery," but it goes on to require "*customer information* and documents" by September 29, 2008 and "an official pedigree of the dog" by October 20, 2008. (Emphasis supplied.)

On September 29, Anderson partially responded to the first category of information by listing co-ownership and other sales agreements regarding 21 dogs. She did not, however, produce the supporting documents. On that same day, Anderson also moved for a protective order seeking to limit her production of information related to customer information to the past seven years. Anderson explained in the motion, in part, that "there has been difficulty in compiling all relevant documents because many documents have been lost, perhaps permanently, due to a computer hard drive crash, and that some documents were in long-term storage." She also objected to the production of the documents as unduly burdensome because it sought documents over 30 years old.

The court informed the parties that the discovery issues could be handled by e-mail correspondence from that point on. And on October 1, the Silvers protested Anderson's filing a motion for protective order instead of producing documents and information "about co-ownership agreements with other clients." They asked the court to deny the motion and impose sanctions for her failure to comply with the court's order. They added that any objection to overly broad requests had been waived by Anderson's failure to object on a timely basis.

On October 3, Anderson responded that after attempting to recover data from the hard drive of her computer and to retrieve files from long-term storage,

> it is now clear that there is only a mere possibility that there remain but a handful of some contracts, that date to the 1980's, that are located in long-term storage and have not yet been found. All responsive documents that existed on the crashed computer hard drive have now been found in hard copy format.

Also on October 3, the trial court denied Anderson's motion for a protective order; ordered her to comply with the court's prior order and to respond by noon on Monday, October 6; and warned that sanctions, including dismissal, could result for failure to comply. By the end of October 3, as the Silvers admit, Anderson "produced 19 contracts and stated that no other contract exists."

Unsatisfied, in the next days, the Silvers twice urged the court to dismiss Anderson's complaint for failure to comply with the court's

orders. In response, Anderson reiterated that she had "fully produced all known co-ownerships or agreements" and that she "retains no records of those dogs no longer actively co-owned or alive."

On October 8, the trial court dismissed the complaint. The court found that Anderson had failed to comply with the August 18 order to produce "customer information and documents on or before September 29, 2008" and failed to comply with the October 3 order. The court found Anderson's failure to be willful because (1) Anderson ignored the denial of her motion for a protective order and, instead, self-limited her responses by only producing customer information for the past seven years; (2) the withheld information "goes to the heart of her claim in an attempt to impede Defendants' ability to find witnesses and information for the defense"; and (3) Anderson failed to offer any legal justification for her failure to comply with the court's orders.

We find that the trial court abused its discretion with the severity of the sanctions. Although Anderson may have been dilatory and evasive, in the end, Anderson reported that she had turned over all customer information as ordered. The Silvers' only arguments about Anderson's failings are, on their face, meritless and, possibly, disingenuous. Accordingly, dismissal was not warranted.

The Silvers first argue that Anderson self-limited her responses to discovery to information from 2002 forward. But their argument to the trial court was based on pure speculation:

> In her Affidavit dated March 15, 2008, . . . Plaintiff testifies that she has been breeding dogs since 1969 and has bred in excess of thirty generations of Norwegian Elkhound dogs. . . . Given her extensive and long history of breeding these dogs, as well as the burdens complained of by Plaintiff in having to produce 30 years of information, we anticipated that Ms. Anderson would have hundreds, if not thousands, of co-ownership agreements spanning thirty-plus years. Thus, when Plaintiff's responses revealed only 21 contracts with the *oldest* dating back only until October 2002, it was evident that her responses were grossly lacking.

The Silvers have no proof whatsoever that Anderson possesses any written agreements prior to 2002 nor that she can remember other agreements yet failed to disclose them. Indeed, Anderson informed the court, prior to the final deadline, that she had "fully produced all known co-ownership agreements. . . ."

The Silvers argued that they discovered that Anderson had failed to identify or produce three known co-ownership agreements because they discovered that Anderson co-owned some of the dogs

with her daughter. But, as Anderson explained, her daughter was a co-owner of the business, and the court, as well as the Silvers, clearly understood the motion to compel as concerning only "customer information."

Overarching this whole discussion is the question of what possible relevance 30 years of customer information has on what is essentially a breach of contract claim arising out of a contract dated March 4, 2006. This is especially curious given that the second category of compelled discovery information — "an official AKC pedigree for the dog" — is not even at issue in this appeal. The Silvers claim that the customer information is essential for them to be able "to challenge the following legal issues: (a) whether Plaintiff knew her contract was vague when she had Defendants sign it, and (b) whether the alleged championship lineage is as valuable as she contends." Although Anderson may have failed to timely object to the breadth of the discovery request, we now have a situation where she has informed the court that she has produced all responsive documents in her possession yet her case was dismissed because the Silvers convinced the court that Anderson should have other agreements that predate the contract at issue by more than four years. And the argument that these older agreements are supposed to show that Anderson knew the March 2006 agreement was vague when drafted is tenuous at best.

Finally, although the record does not include the transcript of the September 18, 2008 hearing at which the Silvers first moved to compel, the only information regarding Anderson's compliance with the order issued that day and the October 3 order were subsequent e-mails from the Silvers, which contained only speculation about the degree to which Anderson had complied with those orders, as well as Anderson's own e-mails. Thus, the rule regarding the absence of transcripts is not controlling here. See generally *Wetherington v. Koepenick & Horne*, 153 Ga. App. 302, 305 (2) (265 SE2d 107) (1980).

Procedurally speaking, after the motion to compel, "[t]he obstinate party is then afforded another opportunity to provide discovery." *Tenet Healthcare Corp. v. La. Forum Corp.*, 273 Ga. 206, 210 (3) (538 SE2d 441) (2000). Thereafter, it is true that "the trial court need not conduct an evidentiary hearing on the issue of wilfulness in those cases 'where the trial court can otherwise determine wilfulness on the part of the party against whom the sanctions are sought.' [Cit.]" Id. at 211 (3). But here, the trial court had insufficient information regarding Anderson's compliance to dismiss her complaint. At most, a lesser sanction would suffice:

> As a general rule, the trial court should attempt to compel compliance with its orders through the imposition of lesser

sanctions than dismissal. The drastic sanctions of dismissal and default cannot be invoked under OCGA § 9-11-37 except in the most flagrant cases. . . .''

*Porter v. WellStar Health System*, 299 Ga. App. 481 (683 SE2d 35) (2009). This is not one of the most flagrant cases. Compare *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182, 183 (402 SE2d 723) (1991) (party failed for 11 months to respond to a single, straightforward interrogatory). Accordingly, the trial court's order is reversed and the case remanded for further proceedings consistent with this order.

*Judgment reversed and case remanded with direction. Blackburn, P. J., and Doyle, J., concur.*

DECIDED AUGUST 13, 2009 —
RECONSIDERATION DENIED SEPTEMBER 2, 2009 — 

*Bryce E. Farbstein*, for appellant.
*Jonathon J. Majeske*, for appellees.