A02A1018. SECHLER FAMILY PARTNERSHIP et al. v. PRIME GROUP, INC. et al.

(567 SE2d 24)

JOHNSON, Presiding Judge.

This case involves an appeal by nonparties from a contempt order entered after the nonparties failed to comply with a court order directing them to respond to a party's subpoenas. The thrust of the appeal is a challenge to the correctness of the discovery order compelling the nonparties to respond to the party's subpoenas. Because we find that the trial court did not abuse its discretion in ordering the nonparties to respond to the party's subpoenas, we affirm the trial court's contempt order.

The underlying lawsuit is a contract dispute arising out of three agreements executed by plaintiffs Prime Group, Inc., Victor Mills, and Oliver Owens ("Prime Group") and defendant Tucker Federal Bank on November 23, 1992. The three agreements at issue are: (1) an operating agreement between Prime Group and Tucker Federal Bank pursuant to which Prime Group agreed to sell and service construction loans and permanent residential loans for Tucker Federal Bank, (2) an employment agreement between Tucker Federal Bank and Mills, and (3) an employment agreement between Tucker Federal Bank and Owens. The claims to be tried in the underlying suit involve breach of contract arising out of the operating agreement and employment agreements.[1]

---

[1] This Court recently affirmed the trial court's order granting, in part, and denying, in part, Prime Group's and Tucker Federal Bank's cross-motions for summary judgment. *Tucker Fed. Bank v. Prime Group*, 252 Ga. App. XXVII (November 7, 2001) (not to be officially reported).

On September 30, 1999, Prime Group directed subpoenas for the production of documents to appellants Sechler Family Partnership, Empire Mortgage & Investment Company, Central Underwriters, Inc., Atlas Smith, Inc., Gwinnett Development & Investment Corporation, Georgia Commercial Properties Corporation, Key Property Management Services, Inc., Daniel Park Community Association, Inc., Baltimore Insurance, Sechler & Associates, and DeFoore House, Inc. ("the Sechler entities"). The subpoenas directed the Sechler entities, none of whom are parties to the underlying proceeding, to appear for deposition and produce the following designated documents:

(1) All documents evidencing, or referring or relating to work performed by Conrad J. Sechler, Sr., Conrad Sechler, Jr. or Frank Barton from November 23, 1992 to the present. (2) All documents evidencing, or referring or relating to any transactions, contracts or agreements between you and Tucker Federal Bank. (3) All documents constituting communications between you and any financial institution from November 23, 1992 to present. (4) All documents referring or relating to any corporation, partnership or other business entity in which Conrad J. Sechler, Sr., Conrad J. Sechler, Jr. or Frank Barton, individually or collectively, are believed by you to have or to have had an interest. (5) All documents evidencing, or referring or relating to any loan or other extension of credit obtained by you from November 23, 1992 to the present.

Conrad Jerome Sechler, Jr. ("Sechler") is the chairman and CEO of Tucker Federal Bank. Either Sechler or his father is an officer, director, managing partner, and/or stockholder of the Sechler entities.

On October 7, 1999, the Sechler entities filed a joint motion to quash the subpoenas, arguing that the subpoenaed documents are not relevant to the underlying action, the subpoenas were promulgated solely for the harassment of Sechler and improperly sought sensitive financial information, and the subpoenas failed to allow sufficient time for the Sechler entities to respond. Prime Group argued that the subpoenaed documents are relevant to their defense to Tucker Federal Bank's counterclaim that Owens breached the terms of his employment agreement. Following oral argument, the motion to quash was denied, although compliance was limited to include only documents that concerned the activities of Sechler.

Rather than respond to the trial court's order, the Sechler entities attempted to appeal the order to this Court. We denied review, holding that the trial court's discovery order was a nonfinal order not

subject to direct appeal.[2] The Sechler entities sought review by the Supreme Court of Georgia, and review was denied.[3] Prime Group subsequently filed a motion for contempt, which the trial court granted. The Sechler entities appeal from this contempt order, arguing that the trial court abused its discretion in denying their motion to quash the subpoenas issued by Prime Group and in entering its order of contempt.

1. Before reaching the merits of the Sechler entities' enumerations of error, we must first address Prime Group's argument that the sole issue on appeal is whether the trial court abused its discretion in ruling that the Sechler entities wilfully violated its discovery order. According to Prime Group, the merits of the discovery order, which the Sechler entities admit they violated, are not relevant to the issue of contempt, and the Sechler entities are limited to arguing error in the trial court's contempt order, and not error in the trial court's original order directing the Sechler entities to respond to Prime Group's subpoenas. We disagree.

This Court has previously held that in every case where a person is charged with contempt of court for alleged violations of a court's order, the legal correctness of the underlying order may be challenged on appeal.[4] Thus, the Sechler entities have the right in this appeal to challenge the correctness of the discovery order compelling them to respond to Prime Group's subpoenas.

2. We also must address the Sechler entities' request that this Court adopt a standard of review other than abuse of discretion in this case. The Sechler entities acknowledge that, ordinarily, discovery matters are within the trial court's sound discretion and, absent a clear abuse of that discretion, this Court will not interfere with the trial court's decision.[5] The rationale for the rule is clear: the trial judge, who is familiar with the particulars of the case, is in the best position to rule on discovery matters. However, citing federal district cases from Texas, New York, and South Carolina, the Sechler entities urge this Court to adopt a standard of review recognizing that a nonparty who receives discovery is entitled to additional deference so as to protect against harassment, inconvenience, or unnecessary disclosure of confidential documents. We decline to adopt such a standard.

OCGA § 9-11-34 (a) (1) provides that a party may request that another party produce documents containing matter discoverable

---

[2] *Sechler Family Partnership v. Prime Group*, Case No. A00A1836 (decided May 3, 2000).

[3] *Sechler Family Partnership v. Prime Group*, Case No. S00C1652 (decided April 6, 2001).

[4] *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 809 (1) (555 SE2d 175) (2001).

[5] *Dagel v. Lemcke*, 245 Ga. App. 243, 244 (2) (537 SE2d 694) (2000).

within the scope of OCGA § 9-11-26 (b), which is the general discovery provision establishing that parties may discover any non-privileged matter which is relevant to the subject matter involved in the pending action. OCGA § 9-11-34 (c) (1) establishes that the discovery of nonprivileged documents also applies to nonparties. As with discovery requested from parties, the only requirements placed by the Georgia legislature on discovery requested from nonparties is that the documents must be relevant and nonprivileged.

Furthermore, the trial court has wide discretion in the entering of orders permitting or preventing the use of discovery which is oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating, or directed to wholly irrelevant and immaterial or privileged matters or as to matter concerning which full information is already at hand.[6] This use of discretion applies to nonparties as well as parties to an action. In fact, using the abuse of discretion standard, this Court has previously reversed a trial court's grant of a protective order to non-parties, holding that the trial court improperly limited a party's document requests from nonparties.[7] We will employ the abuse of discretion standard in this case.

3. In their first enumeration of error, the Sechler entities argue that the trial court abused its discretion in denying their motion to quash the subpoenas and entering its order of contempt based on the expression, "what's good for the goose is good for the gander." According to the Sechler entities, this rule is inapplicable to discovery·disputes and has been rejected by various federal courts. Moreover, since the Sechler entities are neither plaintiffs nor defendants in the underlying action, they cannot be characterized as the "goose" or the "gander."

While the trial court's use of this expression was unfortunate, it does not negate the fact that the trial court used the correct standard in ruling on the discovery issue. The record in the present case clearly shows that the trial judge understood the requirement that the discovery requested be relevant to the litigation. Moreover, even if the trial judge considered the fact that Tucker Federal Bank had received comparable discovery in issuing his order, the Sechler entities have cited no authority prohibiting such consideration. Here, the record shows that the trial court considered whether the documents subpoenaed by Prime Group are relevant to their claims and defenses and ruled that the documents are relevant. The Sechler

---

[6] *Young v. Jones*, 149 Ga. App. 819, 824 (4) (256 SE2d 58) (1979).
[7] See *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club*, 207 Ga. App. 693, 695 (2) (428 SE2d 687) (1993).

entities have failed to demonstrate a clear abuse of discretion by the trial court.

4. The Sechler entities contend the trial court abused its discretion in denying their motion to quash the subpoenas and entering its order of contempt because the subpoenaed documents concern transactions and activities of nonparties and are irrelevant. The Sechler entities argue that Sechler's employment, and evidence that Tucker Federal Bank tolerated certain behavior by him, is not relevant to Tucker Federal Bank's counterclaim against Owens for breach of his employment agreement. They argue that the employment agreements with Mills and Owens differed from Sechler's employment agreement, which expressly permitted Sechler to engage in business with third parties.

Tucker Federal Bank asserts in its counterclaim that Owens violated the "full time" provision of his employment agreement by engaging in certain outside business with third parties. According to Tucker Federal Bank, Owens was terminated because he did not devote his full time to the business of Tucker Federal Bank. The bank relies on a provision in Owens' employment agreement stating that Owens "shall devote his best efforts and his full time to the duties and responsibilities assigned to him in the furtherance of the business of Tucker Federal."

Prime Group contends that Tucker Federal Bank's stated reason for Owens' termination is pretextual and inconsistent with its interpretation of such requirements with respect to other executives of the bank. In defense of Tucker Federal Bank's assertion, Prime Group is attempting to show that Tucker Federal Bank's Chairman of the Board, Sechler, had employment agreements containing substantially the same "full time" provision as Owens' employment agreement, and yet he engaged in outside business with third parties without any reprisal from Tucker Federal Bank. While Tucker Federal Bank argues that Sechler's employment contract was different from Owens' employment contract, the record shows that, at various points in time, Sechler's employment agreements contained a "full time" provision similar to that in Owens' employment contract. In addition, while Sechler's 1997 employment agreement contained an addendum which expressly permitted Sechler to engage in business with certain third parties, not all of the Sechler entities were listed in this addendum.

Given the fact that Tucker Federal Bank has put in issue the propriety of engaging in outside business activities and has taken the position that such conduct violates an executive's "full time" obligations to the bank, Sechler's alleged outside business activities become relevant to show that Tucker Federal Bank's purported reasons for firing Owens are pretextual. Documents showing Sechler's outside

activities, therefore, are relevant to show that Owens did not breach his employment agreement based on Tucker Federal Bank's own course of conduct and its understanding of what the "full time" provision required. The trial court did not abuse its discretion in finding that Prime Group's subpoenas requested relevant discovery material.

5. The Sechler entities next argue that the trial court abused its discretion in denying their motion to quash the subpoenas and entering its contempt order because the production of sensitive financial documents invades the nonparties' rights to privacy. According to the Sechler entities, the inquiry into the relationship between Sechler and the Sechler entities is tantamount to an inquiry into the financial status of these nonparties, and financial privacy has been held to be a right subject to protection when the requested information serves no real purpose.[8] The Sechler entities argue that their right to privacy demands an even more stringent evaluation because they are not parties to the underlying litigation. We find that the trial court's ruling does not violate the Sechler entities' privacy rights as nonparties.

Here, the subpoenas request nonprivileged, relevant information. Although the discovery does seek financial information, there is no evidence that the information could be obtained by other means or that Prime Group's subpoenas are meant merely to embarrass or harass Sechler.[9] In fact, while it is true that Sechler is not a party to the underlying action, Sechler personally fired Owens and helped formulate the reason for his termination on behalf of Tucker Federal Bank.

Moreover, a confidentiality order has been entered in this case, and the Sechler entities may seek an additional confidentiality order if necessary. When parties or nonparties contend that discovery requests unduly invade their privacy, suitable protective orders insuring confidentiality may be sought.[10] The record does not reflect that the Sechler entities requested any such order. And, even if the documents sought to be produced are not themselves admissible evidence, they are still discoverable so long as they appear reasonably calculated to lead to the discovery of admissible evidence.[11] "The discovery procedure is to be given a liberal construction in favor of supplying a party with the facts without reference to whether the facts sought are admissible upon the trial of the action."[12] The trial court

---

[8] *Borenstein v. Blumenfeld*, 151 Ga. App. 420 (260 SE2d 377) (1979).

[9] See *Clayton County Bd. of Tax Assessors*, supra.

[10] *McGinn v. McGinn*, 273 Ga. 292, 294 (540 SE2d 604) (2001); *Apple Investment Properties v. Watts*, 220 Ga. App. 226, 229 (3) (469 SE2d 356) (1996).

[11] OCGA § 9-11-26 (b) (1).

[12] (Citations and punctuation omitted.) *Clayton County Bd. of Tax Assessors*, supra at 696.

did not abuse its discretion in denying the Sechler entities' motion to quash the subpoenas and in entering its order of contempt in this case.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED MAY 29, 2002 —
RECONSIDERATION DENIED JUNE 18, 2002 —

*Schreeder, Wheeler & Flint, David H. Flint, Alexander J. Simmons, Jr., Julia C. Thompson,* for appellants.

*King & Spalding, Michael W. Johnston, Rebecca C. Moore, David J. Onorato, Bettina W. Yip, Hull, Towill, Norman, Barrett & Salley, David E. Hudson,* for appellees.