**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

October 2, 2024

# In the Court of Appeals of Georgia

A24A0257. BRIGHTER CAPITAL MANAGEMENT, LLC et al. v. BCF-EF, LLC et al.

BROWN, Judge.

In the second appearance of these parties before this Court, Brighter Capital Management, LLC, its principal, Ricardo I. Korn, and non-party Hermes Venture, LLC ("Appellants") appeal the trial court's order which held Korn and Hermes Venture ("Hermes") in contempt, struck Brighter Capital and Korn's complaint, and imposed attorney fees and a fine. Appellants argue that the trial court erred both in its contempt holding and in dismissing the complaint. For the following reasons, we affirm the trial court's finding of contempt against Korn and Hermes, but reverse the dismissal of Brighter Capital's claims.

The evidence shows that Korn was the sole member and manager of Brighter Capital, a limited liability company which bought properties at tax sales to rehabilitate and resell. Meanwhile, Emmanuel Fialkow is the owner and sole member of Bentley Spectrum, LLC ("Bentley"). In February 2019, Fialkow and Korn, along with their respective LLCs, Bentley and Brighter Capital, formed a new entity, BCF-EF, LLC ("BCF"), to buy tax sale properties to renovate and sell. The BCF operating agreement that they executed listed Korn and Bentley as the BCF members, Brighter Capital and Bentley as the managers, and designated Fialkow as a "special member" with certain managerial authority over the new LLC. The agreement further provided that Bentley would make an initial capital contribution of $300,000, while Brighter Capital would contribute $1,000. Fialkow considered the Bentley $300,000 capital contribution a loan which would be paid off after about two years.

Between 2019 and 2021, BCF acquired seven properties at tax and foreclosure sales. To finance these purchases, throughout 2019 and 2020, Fialkow and Bentley loaned BCF funds to purchase tax deeds, eventually contributing more than $700,000 to the new company. In contrast, Korn did not deposit any money to BCF's account after his initial $1,000 deposit in March 2019.

In May 2021, Fialkow provided BCF funds to purchase a tax deed at 550 Stratford Green ("550 Stratford") in Avondale Estates, Georgia, a property which was held by the Estate of David Howell. But though Korn bought the 550 Stratford deed with BCF funds, the deed listed Korn, individually, as the property purchaser, instead of BCF. Korn did not initially inform Fialkow of this alleged mistake, though he eventually claimed that the failure to designate BCF as the purchaser was simply a county clerical error. Nonetheless, Korn did not quitclaim the property to BCF until after Fialkow discovered the problem and hired an attorney to demand that Korn do so.

Throughout 2021, the relationship between Fialkow and Korn deteriorated as Fialkow questioned various BCF expenses that Korn claimed and grew increasingly dissatisfied with Korn's refusal to provide requested corroboration. In July 2021, Bentley removed Brighter Capital as the BCF manager and terminated Korn as a BCF officer. In October 2021, Korn and Brighter Capital filed a verified complaint against BCF, Bentley, and Fialkow ("Defendants") for breach of fiduciary duty, false light and defamation, breach of contract, unjust enrichment, and attorney fees. They alleged that Defendants had improperly placed security deeds on BCF properties,

wrongfully blocked Korn's access to the BCF bank account, and unlawfully transferred BCF assets. Korn and Brighter Capital requested that the trial court declare Korn BCF's sole owner; they also requested an accounting and sought to have a receiver appointed and a constructive trust imposed.[1]

BCF and Bentley and, separately Fialkow, answered the complaint and counterclaimed for breach of fiduciary duty, breach of contract, fraud, tortious interference, and bad faith attorney fees. In their verified pleadings, Defendants alleged that Korn repeatedly withdrew money from the BCF account without explanation, that he usurped corporate opportunities, made material factual misrepresentations — including about the 550 Stratford transaction — and improperly paid his separate LLC and alter ego, Hermes, BCF funds without explanation.[2] They requested various relief, including that the trial court order Korn and Brighter Capital to provide missing account and tax information so that BCF could complete its accounting.

---

[1] In May 2022, Korn and Brighter Capital filed an amended complaint through new counsel which set forth the same causes of action.

[2] Korn started Hermes in 2012.

On July 1, 2022, BCF served interrogatories, requests for documents, and requests for admission on Korn and Brighter Capital; the same day, BCF and Bentley served a non-party request for documents on Hermes, through its attorney and registered agent, Leon Van Gelderen, who had previously also served as BCF's counsel. On August 3, Korn and Brighter Capital responded to the discovery by filing a motion for a protective order, claiming that they were protected from discovery by the pending appeal, which involved the trial court's decision to appoint a receiver to manage BCF's assets.[3] Then, on August 15, Bentley served Korn and Brighter Capital and, separately, Hermes with the same discovery requests.[4]

*Motions to Compel*

On August 10, 2022, BCF filed a motion to compel and for sanctions against Korn and Brighter Capital, alleging that neither had responded at all to its discovery requests and that instead of complying with their discovery duties, Korn and Brighter

_____

[3] On June 10, 2022, the trial court granted Korn and Brighter Capital's motion to appoint a receiver, and BCF and Bentley appealed. We affirmed the trial court in an unpublished opinion pursuant to Court of Appeals Rule 36. *BCF-EF, LLC v. Brighter Capital Management, LLC*, 367 Ga. App. XXIII (March 2, 2023) (unpublished).

[4] On August 1, 2022, the trial court granted the parties' consent motion to extend the discovery period until October 31, 2022.

Capital had filed an improper motion for protective order. Arguing that Korn and Brighter Capital's failure to respond to its discovery was intentional, BCF requested that the trial court dismiss their complaint. Hermes had also failed to respond to the discovery, and in September 2022, Bentley filed a motion to compel against it. The next month, BCF and Bentley filed a separate motion to compel against Korn and Brighter Capital, attaching as exhibits both the questions promulgated to them, and the responses they filed after the first motion to compel was filed. Bentley argued that though Korn and Brighter Capital had responded to the discovery, they had asserted baseless objections, had not produced a privilege log, and had refused to provide discoverable information.

In October 2022, after various attempts to schedule Korn's noticed deposition as a representative of Brighter Capital failed, BCF and Bentley filed a third motion to compel and for sanctions against both Korn and Brighter Capital, alleging that Korn, individually and as the representative of Brighter Capital, had failed to appear for his deposition. BCF and Bentley claimed that plaintiffs had "repeatedly shown blatant disregard for the discovery process," and that Korn's failure to appear for a deposition was willful; they requested that the trial court dismiss the complaint.

In November 2022, Korn and Brighter Capital responded to Bentley's first motion to compel, arguing that it was filed in bad faith and sought to compel the production of documents which it already had; they also claimed that they had sufficiently responded to the discovery. Later that month, Korn and Brighter Capital also responded to the third motion to compel, arguing again that Korn had made himself available for a deposition and that the motion was brought in bad faith. Hermes did not respond to the motion against it.

*February 2023 Order Compelling Discovery*

After conducting a hearing on all pending motions, on February 24, 2023, the trial court granted the motion to compel and directed Korn and Brighter Capital to produce all documents in their possession related to 550 Stratford, including communications with David Howell, with his estate, and with counsel for Howell and/or his estate. With respect to Hermes, the trial court concluded that by failing to respond to the discovery, it had waived all objections, so the trial court directed Hermes and Van Gelderen to respond to all of the discovery and appear for a Rule 30 (b)(6) deposition within 30 days. In its order, the trial court noted that in addition to

7

representing Hermes, Van Gelderen "is also the attorney for the Estate of David Howell, which along with BCF-EF, may have claims to 550 Stratford Green."

Hermes filed a response to the production of documents on March 6, 2023. Although the record does not contain the actual documents which Hermes produced, its responses were incomplete: there were requests to which Hermes failed to respond, and it did not produce the requested bank or credit card statements for expenses allegedly incurred by Hermes on behalf of BCF despite discovery requests asking for checks showing transfers between Hermes and BCF and Fialkow and supporting documentation for labor Hermes provided for BCF properties. Similarly, Hermes did not produce any invoices documenting payments it had made, and it produced only three pages regarding Howell and his estate. After receiving the responses, defense counsel sent an e-mail to Hermes' counsel, outlining the production deficiencies.

On March 20, 2023, Korn appeared for a deposition as the designated representative for Hermes. Regarding the 550 Stratford acquisition, Korn testified that he suggested to Van Gelderen that he represent David Howell's estate to speed up the process of acquiring the tax deed for that property. Korn stated that he had a quitclaim deed prepared for the 550 Stratford property and that he "guess[ed]" he gave it to

Van Gelderen, who was representing him at the time. Nevertheless, Korn maintained that he had "[z]ero communication with the estate. No hand signaling, no wink of the eyes, nothing, no notes under the table." When specifically asked about a Ford Ranger, Korn acknowledged that Howell's estate gave him the truck, then explained that this "happens more often than you think." Korn claimed that there was no documentation involved in the vehicle exchange, but that it was solely a verbal transaction.

Korn also testified about expenses for which Hermes had billed BCF, but though Korn apparently produced an expense list for amounts that Hermes had been charged, he offered conflicting deposition testimony about the financial records and did not provide Hermes' financial documentation to corroborate those expenses. At one point in the deposition, Korn testified that he once went to the bank to get Hermes' account documents, but was unsuccessful in his effort. Later, Korn conceded that Hermes had held a debit card, but when questioned about the corresponding bank account, he responded: "Did you ask for bank statements?" At another point in the questioning, Korn declined to provide contact information for employees who performed work for Hermes for which BCF had been billed,

9

explaining that he did not want to provide that information but that opposing counsel could "Google them." More than a dozen times during the proceeding, Korn testified that he did not recall specifics about the business; he also refused to answer numerous questions.

*Motion for Contempt and for Sanctions*

In April 2023, Bentley, later joined by Fialkow, moved for contempt and sanctions against Korn and Hermes, arguing that they had failed to comply satisfactorily with the trial court's February order mandating discovery. The motion, which attached Korn's deposition as an Hermes representative as an exhibit, sought to hold Korn and Hermes in contempt, and requested an award of sanctions for Hermes' non-compliance with the February 2023 order. The pleading outlined Defendants' "ongoing efforts to obtain numerous documents from Korn and Hermes evidencing transaction and communications with BCF [ ] and the Estate of David Howell . . ." and specifically noted Hermes' failure to produce documents regarding the 550 Stratford property. The motion also referred to "Plaintiffs' questionable manner of operating as a manager and .33% member of BCF-EF," and stated that "[a]mong Plaintiffs' dubious actions was Korn's unauthorized transfer of money"

from the BCF to the Hermes account. Bentley and Fialkow claimed that as the sole member and manager of Hermes, the company appeared to be Korn's alter ego; in support, they cited Korn's deposition admission that he used Hermes money to pay personal expenses. Additionally, the motion cited numerous instances from Korn's deposition when he was evasive, refused to answer questions, and told opposing counsel to "[l]ook it up." Although the motion referred to "Plaintiffs," it did not delineate any ways in which Brighter Capital had failed to provide discovery, nor did it assert that Brighter Capital was Korn's alter ego.

Korn and Hermes responded to the motion for contempt, arguing that the deposition questions which Korn refused to answer sought protected work product, that certain documents did not exist, and that the efforts to obtain the financial information constituted harassment.

*Contempt Hearing and Contempt Order*

The trial court held a hearing on the contempt motion at which Bentley reiterated the discovery chronology, argued that Hermes, through Korn, had not made a good-faith effort to comply with the documents request, and asked the trial court to impose contempt sanctions against Korn and Hermes. In response, Korn's counsel

claimed that Korn had tried to obtain the bank documents and had been unsuccessful; he also claimed that certain requested documents simply did not exist. With respect to the trial court's inquiries about Korn's "arrogant answers to questions when he was deposed," Korn's counsel responded that the questions asked for legal conclusions. Korn himself spoke at the hearing, claiming that he had tried to get bank statements and explaining to the trial court that the deposition questions sought information, which he did not "quite have the capacity to answer."

In July 2023, the trial court issued the order at issue here, finding that plaintiffs had "consistently failed to comply with basic discovery procedures and failed to litigate this matter in accordance with the Georgia Civil Practice Act." Specifically, the trial court ruled that Korn, as the sole member of Brighter Capital and non-party Hermes, had failed to produce responsive documents to the discovery and had refused to answer questions in the court-ordered deposition. Therefore, the trial court struck the complaint and dismissed plaintiffs' claims with prejudice, and ordered Korn and Hermes to produce responsive documents and appear for another deposition; pay attorney fees incurred by Bentley and BCF in bringing the motion; and pay $500 a day until the contempt was cured. This appeal followed.

1. Appellants contend that the trial court erred by holding Korn and Hermes in contempt. Specifically, they argue that the contempt finding regarding the non-production of documents was improper because the Hermes bank account was "closed several years ago;" Hermes had a debit card and there were no credit card statements to produce; and the bank records were not in Hermes' control. Similarly, with respect to the trial court's contempt finding based on the non-production of the 550 Stratford documents with Howell's Estate, Appellants claim that these documents "literally do not exist." Finally, Appellants contend that Korn's refusal to answer deposition questions was appropriate because Korn was being deposed in his capacity as Hermes' representative and the questions were improper. For the following reasons, we affirm the trial court's contempt findings.

OCGA § 9-11-37 (b) (2) provides that if a party fails to comply with a prior order compelling discovery, a trial court may sanction the party by making "such orders in regard to the failure as are just" and may choose from, among other things, the list of five sanctions specified by OCGA § 9-11-37 (b) (2) (A) - (E). In doing so, under OCGA § 9-11-37 (b) (2) (D), the trial court may treat a failure to comply with a motion to compel as an act of contempt. *American Med. Security Group v. Parker*, 284

Ga. 102, 105 (6) (663 SE2d 697) (2008). Additionally, we have held that a trial court may find a nonparty in contempt for failing to produce documents in response to a court order. See *Sechler Family Partnership v. Prime Group*, 255 Ga. App. 854, 856-857 (2) (567 SE2d 24) (2002); see also *Ga. Pain & Wellness Center v. Hatchett*, 368 Ga. App. 215, 218-219 (1) (888 SE2d 650) (2023) (setting forth due process requirements for contempt proceeding against nonparty).

Furthermore, "[i]n matters involving discovery disputes, a trial court has broad discretion in controlling discovery . . . and we will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." (Citation and punctuation omitted.) *Belknap v. Belknap*, 351 Ga. App. 748, 755 (3) (833 SE2d 135) (2019). This abuse of discretion standard applies to the imposition of contempt on parties and nonparties alike. See *Sechler*, 255 Ga. App. at 856-857 (2); see generally *City of Roswell v. Eller Media Co.*, 275 Ga. 379, 379 (1) (566 SE2d 659) (2002) ("[a] trial court has wide discretion in determining whether its orders have been violated and such determination will not be disturbed absent a gross abuse of discretion") (citation omitted).

In civil contempt appeals, this Court "will affirm. . . if there is any evidence from which the trial court could have concluded that its [previous] order had been violated." (Citation and punctuation omitted.) *Tate v. Tate*, 340 Ga. App. 361, 362 (1) (797 SE2d 227) (2017); see also *Chatham v. Gardner Excavating*, 353 Ga. App. 806, 810 (2) (840 SE2d 46) (2020) (stating that trial courts have broad discretion in determining contempt and the trial court's ruling will be affirmed if there is any evidence to support it). Significantly, in reviewing a contempt finding, we are mindful that "[t]he essence of civil contempt is wilful disobedience of a prior court order, and it is for the trial court to determine the credibility of the witnesses in ruling thereon." (Citation and punctuation omitted.) *Horn v. Shepherd*, 292 Ga. 14, 18 (4) (732 SE2d 427) (2012).

In this case, there was evidence to support the trial court's finding that both Hermes and Korn, in his representative capacity, willfully disobeyed its February order, which mandated that Hermes respond to the production requests within ten days and also concluded that it had waived all objections by failing to respond. As stated earlier, the record before us does not contain the actual documents which Hermes produced in its discovery response, and Hermes does not claim that it

supplemented that response in any manner. Because the record lacks these documents, there are simply no grounds on which to conclude that the trial court abused its discretion in rendering the contempt ruling. Moreover, Korn testified at the contempt hearing and the trial court was able to evaluate his credibility regarding his noncompliance with the court's order. See *Froehlich v. Froehlich*, 297 Ga. 551, 554-555 (3) (775 SE2d 534) (2015). Accordingly, the trial court did not abuse its discretion in holding Hermes and Korn, in his capacity as a Hermes representative, in contempt for their failure to produce responsive documents. See *In re Callaway*, 212 Ga. App. 500, 502 (442 SE2d 309) (1994) (affirming finding of contempt against non-party wife who was involved in some of the interlocking business entities owned by her husband). Similarly, we find no abuse of the trial court's discretion in finding Korn, in his individual capacity as a plaintiff, in contempt for failure to produce documents regarding Howell's estate, as the trial court directed in its February order. Because we conclude that there was evidence to support the trial court's contempt findings, we need not address Appellants' additional arguments regarding the trial court's contempt finding based on Korn's deposition conduct.

2. Appellants next contend that the trial court erred in dismissing the complaint and argue that because the trial court's order was directed at Hermes' actions and not those of the plaintiffs, the sanction was excessive. As discussed below, as to Korn's claims, we disagree with these arguments and affirm the trial court's ruling. But for the reasons discussed in Division (3) below, we agree that the trial court abused its discretion in dismissing Brighter Capital's claims and we reverse the trial court's ruling as to those claims.

Again, "[a] trial court has broad discretion to control discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." (Citation and punctuation omitted.) *Portman v. Zipperer*, 350 Ga. App. 180, 182 (1) (827 SE2d 76) (2019). Though in this case the trial court did not specify the statute under which it was proceeding, OCGA § 9-11-37 (b) (2) (C) provides, in relevant part, that if a party "fails to obey an order to provide or permit discovery," the court may enter "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or

17

rendering a judgment by default against the disobedient party." See *American Med.*, 284 Ga. at 102 (1).

Nevertheless, dismissal is an extreme sanction and should be granted only in unusual circumstances. See *Portman*, 350 Ga. App. at 182 (1) ("[t]he Supreme Court of Georgia has cautioned against the use of the harsher sanctions of dismissal or default except in extreme cases"). This sanction should only be applied where there is a showing that the disobedient party willfully violated the trial court's order. Id. at 183 (1). See also *McConnell v. Wright*, 281 Ga. 868, 869 (644 SE2d 111) (2007) (cautioning against the use of the harsher sanctions under OCGA § 9-11-37 (b) (2) except in extreme cases). The dismissal sanction set forth in OCGA § 9-11-37 (b) (2) (C) refers to the "disobedient party" and it is axiomatic that it applies only to the parties to the lawsuit. See *NRD Partners, II, L.P. v. Quadre Investments*, 364 Ga. App. 739, 742-743 (2) (a) (875 SE2d 895) (2022) (holding that OCGA § 9-11-37 (b) (2) does not expressly authorize attorney fees award against nonparties as a contempt sanction).[5]

---

[5] Appellants do not enumerate as error the trial court's imposition of attorney fees against Hermes.

Typically, a two-step process is required by the trial court before the dismissal sanction may be imposed as a discovery sanction. *McConnell*, 281 Ga. at 869. First, the trial court must grant a motion to compel discovery. Second, after the party seeking sanctions has notified the court and the disobedient party that the latter has failed to comply with the order granting the motion to compel, the trial court may impose the sanction of dismissal only after giving the disobedient party an opportunity to be heard at an evidentiary hearing and determining that the failure to comply was willful.[6] Id. at 869-870 (stating that a hearing is not absolutely necessary before imposing harsh sanctions for failure to comply with discovery where the trial court can otherwise determine willfulness of the party against whom the sanctions are sought).

In this case, the trial court correctly followed this two-step process. To recap: after a hearing, the trial court granted Defendants' motion to compel in February

---

[6] Given the circumstances of this case, we need not address the issue of whether the trial court must always follow this two-step process, though we are mindful that in *Joel v. Duet Holdings*, 181 Ga. App. 705, 706 (353 SE2d 548) (1987), we rejected the argument that "in the absence of an OCGA § 9-11-37 (a) motion to compel, the trial court's imposition of sanctions under OCGA § 9-11-37 (b) was erroneous." Indeed, "[t]his [C]ourt has upheld sanctions in instances where a party has violated orders, including discovery scheduling orders, other than those pursuant to OCGA § 9-11-37 (a) or § 9-11-26 (c)." *Carrier Corp. v. Rollins, Inc.*, 316 Ga. App. 630, 638 (5) (a) (730 SE2d 103) (2012).

2023, and directed plaintiffs and Hermes to respond to the outstanding discovery. Korn and Brighter Capital did not file additional responses to the discovery; similarly, Korn and Hermes failed to produce all of the requested documents. When Korn, as Hermes' corporate representative, failed to provide adequate deposition responses, Bentley, and then Fialkow, sought court intervention in the motion for contempt and for sanctions. In the motion, in addition to the actions they requested against Hermes, Bentley specifically requested sanctions against plaintiff Korn and requested that the trial court dismiss his claims against Defendants with prejudice.

In July, the trial court conducted another hearing, after which it concluded that "Plaintiffs consistently failed to comply with basic discovery procedures and failed to litigate this matter in accordance with the Georgia Civil Practice Act." The trial court further found that Korn, the sole member of Brighter Capital and Hermes, "failed to comply with the Court's Order by failing to produce all documents responsive to the Defendants' discovery requests" and by "failing and refusing to answer questions under oath in a Court-ordered deposition." Based on these findings, the trial court struck the complaint and dismissed the plaintiffs' claims with prejudice.

Although dismissal is an extreme sanction, the trial court did not abuse its broad discretion in applying this sanction as to Korn's individual claims for his failure to respond to the discovery directed to him. While the sanction should only be applied where there is a showing that the disobedient party willfully violated the trial court's order, this finding of willfulness does not require bad faith or malice on the non-compliant party's part, instead it requires only a "conscious or intentional failure to act, as distinguished from an accidental or involuntary non-compliance." (Citation and punctuation omitted.) *Dentistry for Children of Ga. v. Foster*, 362 Ga. App. 217, 219 (4) (867 SE2d 617) (2022). Given the evidence before it, the trial court was authorized to conclude that Korn, in his individual capacity, acted willfully in failing to provide responses to the requests for production, as the trial court directed in its February order.

Moreover, in considering the issue of wilfulness, we also consider the period of time that elapsed, beginning with the service of the requests for documents. See *Smith v. Nat. Bank of Ga.*, 182 Ga. App. 55, 57-58 (2) (354 SE2d 678) (1987). In this case, that period began in August 2022 with Bentley's service of the requests for documents to Korn and Brighter Capital. Six months later, in February 2023, the trial court

entered its order, directing that Korn provide documentation regarding Howell's estate. When Bentley filed the sanctions motion in April 2023, Korn had not provided additional responses, nor had he supplemented his responses by July 18, 2023, when the trial court conducted the sanctions and contempt hearing. Because there was evidence from which the trial court was authorized to find that Korn, in his individual capacity as plaintiff, willfully failed to comply with its discovery order, and that his failure to respond was not accidental or involuntary, the trial court was within its discretion to dismiss his complaint. See *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182, 182-183 (402 SE2d 723) (1991) (affirming dismissal of complaint where plaintiff failed to respond to interrogatory for eleven months); see also *State Farm Mut. Auto. Ins. Co. v. Health Horizons*, 264 Ga. App. 443, 446 (1) (590 SE2d 798) (2003) ("[t]he trial court's job is to control its litigation, and it has broad discretion in ascertaining whether a party has made a good faith effort to comply with its orders or has wilfully failed to comply").

In reaching this decision, we are mindful that Hermes is not a party to this litigation and that, likewise, Korn's actions as Hermes' corporate representative were not those of a "party," so as to authorize dismissal of the complaint. Nonetheless,

22

given the evidence of Korn's individual failure to respond to the discovery and the fact that the motion for sanctions specifically requested dismissal of his individual claims, we defer to the trial court's broad discretion and find no error in the dismissal of Korn's claims.

3. Appellants contend that the trial court improperly dismissed Brighter Capital's claims because it was not involved in the instant discovery dispute and that in doing so, the trial court ignored the corporate form. In response, appellees argue that the February 2023 order directed the collective "plaintiffs" to produce documents and that Brighter Capital's failure to do so warranted dismissal; or, in the alternative, that Brighter Capital was Korn's alter ego and thus, any sanctions against Korn should apply to that LLC. For the following reasons, we agree that the trial court abused its discretion in dismissing Brighter Capital's claims because that company was not the subject of the motion for contempt and sanctions and therefore did not receive the appropriate, requisite notice.

The starting place for our analysis is that "[a] cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees." *Dept. of Transp. v. McMeans*, 294 Ga. 436, 437 (754 SE2d

61) (2014). This separate identity applies, even when a corporation is owned by one person. See *Shelby Ins. Co. v. Ford*, 265 Ga. 232, 233 (454 SE2d 464) (1995). And this Court has warned that "great caution should be exercised by the court in disregarding the corporate entity." (Citation and punctuation omitted.) *Soerries v. Dancause*, 248 Ga. App. 374, 375 (546 SE2d 356) (2001).

As stated above, Brighter Capital was included in the three motions to compel which Defendants filed before the trial court rendered its February 2023 ruling, directing plaintiffs to produce various documents. But the April 2023 motion for contempt and for sanctions was directed solely at Korn and Hermes, and outlined only deficiencies in Hermes' document production and Korn's behavior. Significantly, there was no mention in the sanctions motion of Brighter Capital, or of any deficiencies in its compliance with the trial court's February order. Similarly, the motion for sanctions only requested that the trial court dismiss Korn's claims — it did not request that the trial court dismiss Brighter Capital's claims.

As stated above, trial courts are "granted a very broad discretion in applying sanctions to enforce compliance with the discovery provisions of the Civil Practice

Act. . . ." (Citation and punctuation omitted.) *ASAP Healthcare Network v. Southwest Hosp. & Med. Center*, 270 Ga. App. 76, 78 (1) (606 SE2d 98) (2004). Nevertheless,

> [i]n determining the particular sanctions to be imposed, this discretion is not without limits. Sanctions may be imposed only after a motion, notice, and a hearing provided to the party against whom sanctions are sought. This means affording the party against whom sanctions are sought an opportunity to explain the circumstances of the failure to timely respond.

(Citation and punctuation omitted.) Id. See also *Howard v. Alegria*, 321 Ga. App. 178, 189 (4) (c) (739 SE2d 95) (2013) (stating that though an order compelling discovery is not a condition precedent for imposing sanctions under OCGA § 9-11-37 (b) (2) (C) or (d) (1), it *is* required to have "a request for sanctions, notice to all parties, and a motion hearing to determine if the offending party's failure to respond was wilful"). Compare *McConnell*, 281 Ga. at 869 (setting forth circumstances in which hearing is not absolutely necessary).

Moreover, "[n]either *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 439 (2) (254 SE2d 825) (1979)[,] nor *Barron v. Spanier*, 198 Ga. App. 801 (403 SE2d 88) (1991), requires a different conclusion." *State Farm,* 264 Ga. App. at 447 (1). Though those cases hold that if a defendant completely fails to respond to discovery, the plaintiff

need not obtain an order compelling a response before filing a motion for sanctions, they do not authorize a trial court to impose the extreme sanction of dismissal in the absence of a motion.

Finally, this is not an instance in which we can determine that Brighter Capital was Korn's alter ego because the record contains minimal evidence on this point. Furthermore, the motion for sanctions did not argue this issue, nor did the trial court engage in any factfinding on this subject. Similarly, because there was no motion against Brighter Capital, the situation here also differs from that in which the record may contain enough evidence of the obstinate party's willful behavior to impose sanctions without a hearing. Compare *Schrembs,* 261 Ga. at 182-183. Accordingly, we must reverse the order of the trial court dismissing Brighter Capital's claims and remand for further proceedings consistent with this opinion. See generally *Taylor v. Marshall*, 321 Ga. App. 752 (743 SE2d 444) (2013).

*Judgment affirmed in part and reversed and remanded in part. Dillard, P. J., and Padgett, J., concur.*