A93A2543. In re SUZANNE CALLAWAY.
(442 SE2d 309)

SMITH, Judge.

Suzanne Callaway, a non-party witness, appeals from an order of the DeKalb State Court holding her in contempt for failure to produce documents pursuant to a court order.

The order was entered in a civil action in which a default judgment was entered against Callaway's husband. After taking the hus-

band's deposition and requesting documents, the plaintiff unsuccessfully sought documents from Callaway. A motion to compel was filed, and the attorney for Callaway's husband responded on her behalf. The trial court ordered Callaway to produce some, though not all, of the documents requested within ten days of the order. Callaway did not move for reconsideration or seek interlocutory review of the trial court's order, and she refused to produce the documents. Approximately one month later, plaintiff filed a motion to hold Callaway in contempt. It was served personally upon Callaway with a rule nisi setting the case down for hearing. The trial court, noting that neither Callaway nor her attorney appeared at the hearing, found Callaway "in willful and contumacious contempt of this Court's order of December 18, 1992." She was given the opportunity to purge herself of contempt by producing the documents and paying plaintiff's attorney fees.

Callaway does not dispute that she has failed to comply with the order to produce the documents. She contends only that the trial court erred in entering that order and therefore erred in holding her in contempt. We disagree and affirm.

The relevant portion of OCGA § 9-11-69, dealing with discovery in aid of execution, provides that a judgment creditor may "(1) [e]xamine *any person*, including the judgment debtor by taking depositions or propounding interrogatories; (2) [c]ompel the production of documents or things . . . *in the manner provided in this chapter* for such discovery measures prior to judgment." (Emphasis supplied.) The spouse of a judgment debtor is therefore within the scope of the post-judgment discovery process, subject to the limitations created by the Civil Practice Act provisions governing discovery generally. The decisions cited by Callaway are wholly inapposite since they were decided under former Ga. Code Ann. § 38-1201, which provided for discovery only from the opposite party or defendants in fi. fa. We also reject Callaway's argument that subsection (2) is impliedly limited to documents in the possession of the judgment debtor. This is too narrow a reading of the statute, particularly in light of the expansive scope of subsection (1) and the express limitations stated in subsection (3).

Under the provisions of the Civil Practice Act, the trial court has broad discretion in controlling discovery in a civil action, including post-judgment discovery. *Ostroff v. Coyner*, 187 Ga. App. 109, 117-118 (6) (369 SE2d 298) (1988). The trial court in its discretion balances the right of a party to obtain discovery and the right of individuals to be protected from unduly burdensome or oppressive inquiries. See OCGA § 9-11-26 (c). The trial court has the power to impose sanctions, including citation for contempt, for failure to comply with its orders controlling discovery. *Ostroff*, supra at 117.

The record in this action reveals that Callaway's husband owns or holds an interest in a bewildering number of corporations, partnerships and business entities which involve or involved substantial sums of money. A personal financial statement prepared by Callaway's husband approximately two years before the deposition showed a net worth of $9,000,000, including portable personal property valued in excess of $400,000. At his deposition, however, Callaway's husband testified that he had no income, owned no real property except a one-half interest in the marital residence, and owned no personal items of value except a watch, cufflinks, a gold coin, and a wedding ring. While the husband and Callaway had possession of a Porsche, a Mercedes, a Range Rover, and several boats, including one valued at between $950,000 and $1,000,000, all these items were titled in one of the husband's corporations. The husband did not believe that corporation had "any real books" and did not know whether there was a general ledger.

The husband testified that a friend was supplying the corporation with cash on a somewhat informal basis; he stated that Callaway was making the loan payments on the corporation's property and supporting herself and her husband on leasing commissions and an inheritance from her mother. It further appears from the record that Callaway has an interest in the corporation which owns the cars and other property, as well as an interest in another of her husband's corporations and a one-half interest in the marital residence in lieu of salary from yet another of her husband's corporations. Callaway set up one or more corporations shortly after her husband's business ventures ran into financial difficulties, but she and her corporation are engaged in the same type of business activity as her husband and operate out of the same location as the husband's corporation.

There is some evidence in the record to support the conclusion that Callaway's records are relevant to the subject matter of the husband's litigation or reasonably calculated to lead to the discovery of admissible evidence. OCGA § 9-11-26 (b) (1). It appears that Callaway has an interest in at least some of the complex and interlocking business entities owned or controlled by her husband, that she is involved in some of their financial transactions, and that she is involved in the same or similar business as her husband, albeit under a different business name. Because there is evidence supporting the trial court's order we will not disturb it on appeal. *Kemira, Inc. v. Amory*, 210 Ga. App. 48, 51-52 (1) (435 SE2d 236) (1993).

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 17, 1994.

*Wagner & Johnston, Benjamin H. Pruett, R. Jeffrey Morrison,* for appellant.
*Mark A. Baker,* for appellee.