**THIRD DIVISION**
**ELLINGTON, P. J.,**
**MCFADDEN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 25, 2016**

# In the Court of Appeals of Georgia

A15A1969. HICKEY et al. v. RREF BB SBL ACQUISITIONS, LLC.

ELLINGTON, Presiding Judge.

RREF BB SBL Acquisitions, LLC ("SBL Acquisitions") obtained a judgment against Robert Hickey, Jr., and other defendants, in May 2013. As part of its post-judgment discovery efforts, SBL Acquisitions served a subpoena on nonparty SunTrust Banks, Inc. for deposition and request to produce documents upon appearance (the "Subpoena"). The schedule of documents requested to be produced included documents related to checking accounts, savings accounts, and money market accounts associated with Robert Hickey's wife, non-party Caroline Hickey,[1]

---

[1] Also sometimes referred to in the record, and on the accounts at issue, as "Carolyn" Hickey.

and accounts on which she was listed as signatory or owner.[2] The Hickeys filed a motion to quash the Subpoena and for sanctions. The trial court denied the motion. The Hickeys sought unsuccessfully to obtain a certificate of immediate review from the trial court, after which they filed this direct appeal. The Hickeys contend that the trial court erred in denying their motion to quash because the Subpoena sought documents which were not relevant to the collection of the judgment, exceeded the scope of permissible post-judgment discovery, and infringed upon Caroline Hickey's privacy rights. For the reasons set forth below, we disagree and affirm.

1. As a threshold issue, we address SBL Acquisitions's motion to dismiss this appeal. SBL Acquisitions contends that an order involving a discovery dispute may not be directly appealed under OCGA § 5-6-34 (a), but may only be appealed under the procedures for interlocutory appeals under OCGA § 5-6-34 (b). It follows, SBL Acquisitions argues, because the Hickeys failed to follow the interlocutory appeal procedures, this Court must dismiss the appeal for lack of appellate jurisdiction.

---

[2] The documents sought included "applications, signature cards, statements. checks (front and back), wire transfers, deposits, debits, credits and cashier's checks, withdrawal slips, debit and credit memos, and IRS Form 489's (Currency Transfer Reports)."

We have "applied to post-judgment discovery the general rule that orders regarding discovery during the pendency of litigation must be appealed under the application procedures outlined in OCGA § 5-6-34 (b)." (Citation and punctuation omitted.) *Sipple v. Atwood*, 223 Ga. App. 677, 678 (478 SE2d 473) (1996). See *Cornelius v. Finley*, 204 Ga. App. 299, 300-301 (418 SE2d 815) (1992) (accord). Here, as it appears the disputed discovery remains unanswered, matters remain pending in the trial court. See *Cornelius v. Finley*, 204 Ga. App. at 301; OCGA § 5-6-34 (a) (1) (Appeals may be taken from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below.").

The Hickeys contend that the trial court's order is nevertheless directly appealable under the collateral order doctrine, which

> is to be applied if the order being appealed (1) resolves an issue that is "substantially separate" from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it.

(Citation and punctuation omitted.) *Britt v. State*, 282 Ga. 746, 748 (653 SE2d 713) (2007). SBL Acquisitions, on the other hand, maintains that the collateral order

3

doctrine in Georgia does not extend to discovery orders, with narrow exceptions not applicable here.

SBL Acquisitions relies primarily on *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77 (485 SE2d 525) (1997), a case in which "a majority of this Court adopted the United States Supreme Court's rationale in finding discovery disputes not subject to the collateral order doctrine."[3] *General Motors Corp. v. Hammock*, 255 Ga. App. 131, 132 (564 SE2d 536) (2002). In doing so, we followed the United States Supreme Court's reasoning[4] that "in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling. *Firestone Tire &c. Co. v. Risjord*, 449 U. S. 368, 377 (101 SCt 669,

---

[3] We interpret *Johnson & Johnson* as establishing a general rule inasmuch as our Supreme Court has found that discovery orders might be directly appealed under the collateral order doctrine. See *American Med. Security Group v. Parker*, 284 Ga. 102, 104 n. 9 (4) (663 SE2d 697) (2008) (noting that "other discovery orders might be subject to direct appeal under the collateral order doctrine"); *Britt v. Britt*, 282 Ga. at 748 (1) (finding "the discovery order here is directly appealable because it falls squarely within the purview of the collateral order doctrine").

[4] The Georgia Supreme Court has also generally followed the lead of the United States Supreme Court in applying Georgia's version of the collateral order doctrine. See *Warren v. State*, 297 Ga. 810, 811 n. 2 (778 SE2d 749) (2015).

66 LE2d 571) (1981)." (Punctuation omitted.) *Johnson & Johnson v. Kaufman*, 226 Ga. App. at 82.[5]

The rationale of the United States Supreme Court that we adopted in *Johnson & Johnson* does not apply, however, to a discovery order directed at a disinterested third party. Rather, "under the so-called *Perlman* doctrine, a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology v. United States*, 506 U. S. 9, 18 n.11 (113 SCt 447, 121 LE2d 313) (1992) (citing *Perlman* v. *United States*, 247 U. S. 7 (38 SCt 417, 62 LE 950) (1918)).[6] This court implicitly followed the *Perlman* doctrine in *In re Hall County Grand Jury Proceedings*, 175 Ga. App. 349, 350 (1) (333 SE2d 389) (1985), wherein we allowed the intervenors to directly appeal an order denying a motion to quash a grand jury subpoena in order to assert a privilege

---

[5] See *Piratello v. Philips Electronics North American Corp.*, 360 F3d 506, 508-509 (II) (5th Cir. 2004) (finding that "the availability of an appeal through a contempt order renders the collateral order doctrine inapplicable to discovery orders").

[6] See *Piratello v. Philips Electronics North American Corp.*, 360 F3d at 508 n. 1 (II) (finding discovery orders are not directly appealable final judgments, but noting that the rules are different with respect to non-parties, citing *Church of Scientology v. United States*, 508 U. S. at 18 n. 11).

in the matters sought. And in *In re Dekalb County Special Grand Jury Proceedings*, 252 Ga. App. 359, 360 (555 SE2d 791) (2001), we explained that "[u]nder the *Perlman* exception, an intervenor may immediately appeal an order denying a motion to quash a subpoena duces tecum which was served upon a third-party custodian of records because that third party presumably lacked a sufficient stake in the proceedings to risk contempt for its noncompliance." In light of *Church of Scientology*, supra, we disagree with SBL Acquisitions that the *Perlman* doctrine should be limited in Georgia to matters involving grand jury subpoenas or claims of privilege.

Here, the Subpoena in dispute requires the production of documents by a disinterested third party, SunTrust Bank, and the Hickeys could not have challenged the Subpoena through a direct appeal of a contempt order. We therefore find *Johnson & Johnson* distinguishable. The Subpoena was directed at obtaining documents and information associated with Caroline Hickey, who is not a judgment debtor. She claims a privacy interest in this information, which is an important claim of right substantially separate from, and collateral to, other issues in the case. If her information is not subject to disclosure, it cannot be undisclosed by a later reversal of an erroneous order. See *Britt v. State*, 282 Ga. at 748 (finding that, once requested

6

information was revealed, the damage would have been done, and no appeal after final judgment could rectify the harm). An appeal from the order refusing to quash the Subpoena would conclusively resolve that claim of right. Accordingly, we find the order denying the Hickeys' motion to quash to be directly appealable under the collateral order doctrine and deny SBL Acquisitions's motion to dismiss the appeal.

2. The Hickeys contend that the trial court erred in denying their motion to quash the Subpoena insofar as it required the production of documents by SunTrust. OCGA § 24-13-23 (b) (1) "gives the trial court discretion upon timely motion to quash or modify such a subpoena if it is unreasonable and oppressive. This standard is tested by the peculiar facts arising from the subpoena itself and other proper sources." (Citation and punctuation omitted.) *Walker v. Bruhn*, 281 Ga. App. 149, 151 (2) (635 SE2d 322) (2006). See *Blake v. Spears*, 254 Ga. App. 21, 23 (2) (561 SE2d 173) (2002) (accord). The Hickeys contend that the Subpoena was unreasonable and oppressive in that it requested documents that were not relevant and was harassing and overbroad in its nature and scope. They further assert that the Subpoena is oppressive because it infringes on Caroline Hickey's privacy rights.

(a) We disagree with the Hickeys that the trial court erred in failing to grant the motion to quash because the documents sought by SBL Acquisitions were not

7

relevant. "[T]he only requirements placed by the Georgia legislature on discovery requested from nonparties is that the documents must be relevant and nonprivileged." *Sechler Family Partnership v. Prime Group, Inc.*, 255 Ga. App. 854, 857 (2) (567 SE2d 24) (2002). See OCGA § 9-11-34 (c) (1). In the context of discovery, "courts should and ordinarily do interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." (Citation and punctuation omitted.) *Bowden v. Medical Center, Inc.*, 297 Ga. 285, 291 (2) (a) (773 SE2d 692) (2015).

The purpose of post-judgment discovery is to aid a litigant in obtaining satisfaction of a judgment, "and any question that seeks information which would lead to any property or sources of income of the judgment debtor is pertinent and allowable." *Aldridge v. Mercantile Nat. Bank*, 132 Ga. App. 788, 789 (2) (209 SE2d 234) (1974). OCGA § 9-11-69 provides, in relevant part:

> In aid of the judgment or execution, the judgment creditor . . . may . . . (1) Examine any person, including the judgment debtor by taking depositions or propounding interrogatories; and (2) Compel the production of documents or things . . . in the manner provided in this chapter for such discovery measures prior to judgment.

8

We have previously found that OCGA § 9-11-69 (2), which allows the judgment debtor to compel the production of documents, is not limited to documents in the possession of the judgment debtor. See *In re Callaway*, 212 Ga. App. 500, 501 (442 SE2d 309) (1994). Rather, "[t]he spouse of a judgment debtor is . . . within the scope of the post-judgment discovery process, subject to the limitations created by the Civil Practice Act provisions governing discovery generally." Id. In considering the claim of the spouse of a judgment debtor that a trial court erred in requiring the spouse to respond to a request to produce, we found that a "legitimate subject of inquiry" included, among other things, "other sources of income [and] bank accounts." (Citation and punctuation omitted.) *Esasky v. Forrest*, 231 Ga. App. 488, 490 (2) (b) (499 SE2d 413) (1998).

Here, SBL Acquisitions does not contend that it could garnish Caroline Hickey's funds to satisfy the debt of her spouse. SBL Acquisitions was, however, authorized to seek discovery that would *lead to* any property or other sources of income of Robert Hickey. See *Aldridge*, 132 Ga. App. at 789 (2). Further, SBL Acquisitions relied on more than just the spousal relationship to support its contention that the documents requested in the Subpoena were relevant to its post-judgment discovery. The record shows that Robert Hickey is a member of the

9

Dunwoody Country Club. Caroline Hickey began paying Robert Hickey's membership dues (totaling over $10,000) from the two SunTrust accounts at issue here beginning in September 2013, after judgment had been entered against Robert Hickey in May 2013. Before that time, the membership dues were paid from a joint bank account in the name of both Caroline Hickey and Robert Hickey. Given that relevance is viewed very broadly in the context of discovery, and that Carloline Hickey paid a substantial amount of Robert Hickey's personal expenses from the two accounts specifically identified in the Subpoena, it was within the trial court's discretion to conclude that whether Robert Hickey had an interest in or was the source of funds in those accounts was relevant to SBL Acquisition's post-judgment discovery. See *Davenport v. State*, 316 Ga. App. 234, 241 (4) (729 SE2d 442) (2012) (in ruling on a motion to quash a subpoena, the trial court has wide discretion in determining whether evidence is relevant).

(b) We also disagree with the Hickeys that, in light of the nature and scope of the request to produce, the trial court erred in failing to quash the subpoena as unreasonable and oppressive. The documents which SunTrust was required to produce under the Subpoena included "documents, from January 1, 2013, to present, related to any and all checking accounts, saving accounts, and/or money market

10

accounts . . . directly or indirectly associated with" Caroline Hickey, including, specifically, the two accounts that SBL Acquisitions showed were used by Caroline Hickey to pay for Robert Hickey's personal expenses. Although the Subpoena was broadly worded in its scope, the Hickeys did not show that there were other accounts in Caroline Hickey's name that would fall within the Subpoena, or that the number of documents encompassed thereby, which were sought from SunTrust, was oppressive or harassing as to Caroline Hickey. And, although the period of time for which the documents were requested was approximately five years, including approximately three years before the entry of judgment against Robert Hickey, we cannot conclude that the scope of the Subpoena was so broad that it was a clear abuse of discretion for the trial court to allow it.

(c) Lastly, we consider the Hickeys' claim that the trial court erred in failing to quash the Subpoeana because it infringed on Caroline Hickey's privacy interest in her banking records.[7] In the discovery process, "the competing interest in an individual's right to privacy must be accommodated[.]" (Punctuation and footnote

---

[7] Caroline also contends that her due process rights were violated in that "she was not in the same position she would have been had the document requests been made directly to her." She presents, however, no legal authority for the proposition that SBL Acquisitions was required to request financial records from her directly.

omitted.) *Dikeman v. Mary A. Stearns, P.C.*, 253 Ga. App. 646, 648 (1) (a) (560 SE2d 115) (2002). And "this is particularly true where the information pertains to nonparties." Id. See *Borenstein v. Blumenfeld*, 151 Ga. App. 420 (260 SE2d 377) (1979) (holding that "interests of justice do not require production of tax returns in the face of a motion for protective order where other discovery methods are available to obtain the same information.").

Banking records, at least for purposes of Fourth Amendment jurisprudence, are considered to be property of the bank in which one has no reasonable expectation of privacy. See *Hatcher v. State*, 314 Ga. App. 836, 838 n. 6 (726 SE2d 117) (2012) (noting that "one has no reasonable expectation of privacy in information voluntarily conveyed to another and maintained in the business records of another"); *Culpepper v. State*, 156 Ga. App. 331 (1) (274 SE2d 616) (1980) (finding that "[t]he banking records in question are the property of the banks involved; and release of the records by the banks violates no constitutionally protected interest of appellant.") (citations omitted). And, in the context of a civil dispute, we have found that a person has no reasonable expectation of privacy in copies of checks and deposit slips relating to a checking account, as they "are instruments of commercial trade which must necessarily be exposed to numerous persons in the ordinary course of business."

*Adams v. Trust Co. Bank*, 145 Ga. App. 702, 704 (2) (244 SE2d 651) (1978). On the other hand, the privacy of banking records are protected to some extent by statute. Except in the circumstances set forth in OCGA § 7-1-360, a financial institution is not "required to disclose or produce to third parties, or permit third parties to examine any records pertaining to a deposit account, loan account, or other banking relationship[.]" Id. However, the excepted circumstances include "[w]here the records of accounts or other customer records are requested through subpoena or other administrative process." OCGA § 7-1-360 (a) (2). The statute "is not intended to hinder proper discovery in a lawsuit[.]" *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club*, 207 Ga. App. 693, 695 (428 SE2d 687) (1993). Further, the Hickeys do not point to "evidence that the information could be obtained by other means or that [the Subpoena was] meant merely to embarrass or harass" Caroline Hickey. (Footnote omitted.) *Sechler Family Partnership v. Prime Group, Inc.*, 255 Ga. App. at 859 (5) (finding that discovery of financial information did not violate non-parties' privacy interests). We conclude that, notwithstanding that it pertained

to her banking records, the Subpoena did not impermissibly infringe upon Caroline Hickey's privacy rights.[8]

For the foregoing reasons, the trial court did not abuse its discretion in denying the Hickeys' motion to quash the Subpoena.

*Judgment affirmed. McFadden and Mercier, JJ., concur.*

---

[8] We note that "[w]hen parties or nonparties contend that discovery requests unduly invade their privacy, suitable protective orders insuring confidentiality may be sought." *Sechler Family Partnership v. Prime Group, Inc.*, 255 Ga. App. at 859 (5).