**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2025**

# In the Court of Appeals of Georgia

A25A1411. OMNI HEALTHCARE, LLC v. STACY YOUNG EXCAVATION, INC. et al.;

A25A1452. OMNI HEALTHCARE, LLC v. STACY YOUNG EXCAVATION, INC. et al.;

A25A1473. NORTHLAKE ANESTHESIA PROFESSIONALS, LLC v. STACY YOUNG EXCAVATION, INC. et al.;

A25A1474. NORTHLAKE ANESTHESIA PROFESSIONALS, LLC v. STACY YOUNG EXCAVATION, INC. et al.;

A25A1475. AMERICAN HEALTH IMAGING OF LAWRENCEVILLE, LLC v. STACY YOUNG EXCAVATION, INC. et al.

PADGETT, Judge.

These five appeals arise out of a discovery dispute in two personal injury cases.

Non-parties, Omni Healthcare, LLC ("Omni"), Northlake Anesthesia Professionals,

LLC ("Northlake"), and American Health Imaging of Lawrenceville, LLC ("AHI"),

challenge several trial court orders requiring them to produce documents to the

defendants Stacy Young Excavation, Inc. ("Stacy Young") and Elton J. Hawkins. For the reasons that follow, we affirm in A25A1474, A25A1475, A25A1452 and A25A1453, and we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion in A25A1411.

1. The record reflects that Jose Sanchez Herrera and Carlos Vega each separately filed suit against Stacy Young and Stacy Young's employee, Hawkins, in separate lawsuits for damages arising out of the same automobile accident.[1] As part of their damages, both Herrera and Vega sought to recover "the full value of [their] past and future medical expenses[.]"

Northlake provided anesthesia services to Herrera and Vega during surgery for their injuries, AHI performed MRIs on Herrera, and Benchmark Physical Therapy ("Benchmark") provided physical therapy services to Herrera.[2]

Northlake and AHI sold their medical accounts receivables for Herrera and Vega to Omni, and Benchmark sold its medical accounts receivables for Herrera to Omni. Omni is a medical "factoring" company, and part of its business includes

---

[1] Herrera and Vega are represented by the same law firm.

[2] Benchmark is not a party to these appeals.

purchasing the medical accounts receivable from certain healthcare providers that offer lien-based medical care to plaintiffs in personal injury cases. See *Rose v. Commercial Factors of Atlanta, Inc.*, 262 Ga. App. 528, 528 (586 SE2d 41) (2003) (explaining that "the business of purchasing accounts receivable [is] known as 'factoring'"); see also *United States v. Schwartz*, 541 F3d 1331, 1333 (I) (A) (1) (11th Cir. 2008) ("[T]he purchase of discounted accounts receivable, or invoices, [is] a financing practice called factoring.") (footnote omitted). In doing so, Omni becomes the assignee of the receivable, which is generally secured by a letter of protection[3] or lien on any damages that the plaintiff may recover at the conclusion of his or her case, but the plaintiff remains obligated for the amount billed. Omni contends that this arrangement enables a person to obtain medical care and the provider to receive payment, while transferring the collection risk to Omni.

In Herrera's lawsuit, Stacy Young and Hawkins served non-party requests for the production of documents on Omni, Northlake, and AHI. In Vega's lawsuit, Stacy

---

[3] A letter of protection is "a contractual arrangement under which a patient is permitted to undergo treatment and defer payment to a later date." *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 48-49 (903 SE2d 728) (2024) (citing OCGA § 44-14-470). Under this kind of contract, "the patient's outstanding medical debt is collateralized by any potential claim arising from the alleged injuries and is secured by a medical lien, but the patient remains personally liable for the balance." Id. at 49.

Young and Hawkins served non-party requests for the production of documents on Omni and Northlake. The requests sought the production of documents related to how Omni determined the amount it paid to Herrera, Vega, or their medical providers to purchase the receivables or pay for their medical care. The requests also sought the production of all "agreements" between Omni and the plaintiffs' medical providers.

Omni responded and objected to the discovery requests on its own behalf in both cases and moved to quash and for a protective order in Vega's case. Northlake responded and objected to the discovery requests on its own behalf in Herrera's case and moved for a protective order in both cases. And AHI produced some documents in Herrera's case but raised no objections to the discovery. The defendants moved to compel discovery and for sanctions against Omni and AHI in Herrera's case. After additional, extensive briefing by the defendants and the non-parties, the trial court entered five separate discovery orders.

The trial court granted the defendants' motion to compel as to Omni and AHI and denied the defendants' motion for sanctions against those parties, denied Northlake's motions for protective orders, and denied Omni's motion to quash and

4

for a protective order filed on behalf of Northlake. These companion appeals filed by Omni, Northlake, and AHI follow.[4]

Omni asserts that the rates at which it purchases accounts receivable from medical providers, which the parties refer to as "pricing information," are trade secrets based off of its own proprietary models and data. The defendants, on the other hand, point to prior versions of a "provider agreement" between Omni and Barbour Orthopedics,[5] arguing that Omni and medical providers have previously entered into joint-marketing agreements, which reveal a "roster of participating providers[.]" The defendants assert that Omni may be incentivizing these medical providers through patient referrals, marketing, advertising, and entertainment. They contend that Omni distributes plaintiffs amongst medical providers through its referral networks, and that it engages in back-channel communications to build claims by routing personal injury plaintiffs to its network of partnering lien-holders to help build "phantom damages"

---

[4] Omni, Northlake, and AHI filed these direct appeals of the trial court's orders. As we discuss more fully in Division 2, non-parties have a direct right to an immediate appeal of non-party discovery orders. See *Hickey v. RREF BB SBL Acquisitions LLC*, 336 Ga. App. 411, 411-414 (1) (785 SE2d 72) (2016).

[5] Barbour Orthopedics is not a party to these appeals, but it appears to have provided care to both Herrera and Vega.

that are "reduction friendly," meaning that Omni may accept less than the amount billed. Relevant to these appeals, the defendants question whether any of the medical care provided to the plaintiffs was necessary, or whether it was orchestrated by Omni to create phantom damages.

In Case Numbers A25A1411, A25A1474, and A25A1475, Omni, Northlake, and AHI, respectively, challenge the trial court's discovery orders in Herrera's lawsuit. In Case Numbers A25A1452 and A25A1453, Omni and Northlake, respectively, challenge the trial court's discovery orders in Vega's lawsuit.

In Case Number A25A1411, Omni appeals from the orders entered in Herrera's case, and argues that the trial court erred in granting the motion to compel Omni to produce its pricing information, which it contends: is not relevant to show the bias, intent, or motive of Herrera's medical providers, is not relevant for the purpose of proving the reasonableness of Herrera's medical bills, is overbroad and unduly burdensome, not relevant, harassing, and is being sought for use in other cases or future cases, and that the trial court erred by requiring the production of Omni's trade secret information. In Case Number A25A1452, Omni appeals from the discovery orders entered in Vega's lawsuit and again argues that the trial court erred in requiring

the production of its trade secret information and that the trial court's discovery orders were inconsistent.

In Case Numbers A25A1474 and A25A1453, Northlake appeals from of the discovery orders in both Herrera's and Vega's cases. Northlake argues that the trial court erred in denying its request for a protective order, likewise asserting that it requires the impermissible production of Omni's trade secret information and that the trial court's discovery orders are inconsistent.

In Case Number A25A1475, AHI appeals from the discovery orders entered in Herrera's case and argues that the trial court erred in granting the defendants' motion to compel its production without first trying to resolve the discovery dispute pursuant to Georgia Uniform Superior Court Rule 6.4 (B) ("Rule 6.4 (B)"), the trial court failed to analyze relevance, burden, or expense when entering its order, and that the trial court's order lacks sufficient detail for compliance because it omits any specific reference to which of the defendants' 18 non-party requests for production to AHI should be supplemented. AHI also repeats the arguments about Omni's purported trade secrets and the inconsistent discovery orders.[6]

---

[6] Effective April 21, 2025, the General Assembly enacted OCGA § 51-12-1.1 (d), which provides that "[i]n any claim for medical and healthcare expenses rendered

7

2. As a threshold issue, we address the defendants' argument that we do not have jurisdiction over these appeals. See *Studdard v. Satcher, Chick, Kapfer*, 217 Ga. App. 1, 2 (456 SE2d 71) (1995) ("In every matter coming to this court, we are required to examine the record to make certain we possess jurisdiction.") (citation and punctuation omitted). Omni, Northlake, and AHI have directly appealed the discovery orders pursuant to the collateral order doctrine.[7] Relying upon this doctrine,

---

under a letter of protection or any other arrangement by which a healthcare provider renders treatment in exchange for a promise of payment for the plaintiff's medical and healthcare expenses from any judgment or settlement of a civil action to recover damages resulting from injury or death to a person, regardless of how such arrangement is referred to, the following shall be relevant and discoverable: (1) A copy of the letter of protection; (2) All charges for the plaintiff's medical and healthcare expenses, which shall be itemized and, to the extent applicable, coded according to generally accepted medical billing practices; (3) If the healthcare provider sells the accounts receivable for the plaintiff's medical and healthcare expenses to a third party at less than the invoice price: (A) The name of the third party; and (B) The dollar amount for which the third party purchased such accounts receivable; and (4) Whether the claimant was referred for treatment under a letter of protection or other similar arrangement and, if so, the identity of the person who made the referral." However, OCGA § 51-12-1.1 (d) "shall apply only with respect to causes of action arising on or after the effective date of this Act, and any prior causes of action shall be governed by prior law." Georgia Laws 2025, Act 9, §§ 7, 9, effective April 21, 2025. Because the automobile accident at issue in this case occurred in January 2022, OCGA § 51-12-1.1 (d) does not apply to this case.

[7] The collateral order doctrine is "to be applied if the order being appealed (1) resolves an issue that is 'substantially separate' from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final

this Court has held that"a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 413 (1) (785 SE2d 72) (2016) (citation and punctuation omitted).

In our recent opinion in *Benchmark Rehabilitation Partners, LLC v. SDJ Logistics, LLC*, 367 Ga. App. 203 (885 SE2d 224) (2023), we denied a motion to dismiss an appeal brought pursuant to the collateral order doctrine. In that case, the appellee argued that the doctrine did not authorize a non-party's direct appeal from an interlocutory discovery order. Id. at 204 (2). As we noted, "[i]n determining whether the collateral order doctrine applies, we are to evaluate the entire class to which the claim belongs to determine whether this category of claims is potentially appealable under the collateral order doctrine." Id. (citation and punctuation omitted). In the instant cases, the defendants contend that we should revisit our interpretation of appellate jurisdiction under the collateral order doctrine because

judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it." *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 412 (1) (785 SE2d 72) (2016) (citation and punctuation omitted).

parties such as Omni "have tens if not hundreds of millions of dollars worth of incentives to try to obstruct and delay discovery efforts into their business models, by any means necessary." We decline to do so. A possible financial stake in the outcome of a case is not the determinant, and the entire class of cases is that of a disinterested non-party seeking to appeal a discovery order. Id.; see *Hickey*, 336 Ga. App. at 413 (1). The trial court's orders require the production of documents by Omni, AHI, and Northlake, seeking information about Omni and its business, and Omni claims a privacy interest in this information, which is an important claim of right substantially separate from, and collateral to, other issues in the case. If its information is not subject to disclosure, it cannot be undisclosed by a later reversal of an erroneous order. *Hickey*, 336 Ga. App. at 413-414 (1).

3. In Case Number A25A1411, Omni asserts in several claims of error that the trial court erred by granting the defendants' motion to compel in Herrera's case. "Georgia's Civil Practice Act provides for broad discovery into all matters that are relevant and not privileged." *Bethune v. Bethune*, 363 Ga. App. 273, 275 (2) (870 SE2d 827) (2022). OCGA § 9-11-26 (b) (1) states:

Unless otherwise limited by order of the court in accordance with this chapter, the scope of discovery is as follows:

. . . .

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Under OCGA § 9-11-34 (a) (1), a party may request that another party produce documents discoverable within the scope of OCGA § 9-11-26 (b). OCGA § 9-11-34 (c) (1) sets forth that the discovery of nonprivileged documents also applies to nonparties. "Thus, as with discovery requested from parties, the only requirements placed by the Georgia legislature on discovery requested from nonparties is that the documents must be relevant and nonprivileged." *Ortho Sport & Spine Physicians v.*

*City of Duluth*, 352 Ga. App. 215, 216 (2) (834 SE2d 315) (2019) (citation and punctuation omitted).

"In the discovery context, courts should and ordinarily do interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 52 (1) (903 SE2d 728) (2024) (citation and punctuation omitted). And "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Id. (citation and punctuation omitted). But "the fact that certain records are nonprivileged and relevant does not automatically mean that they are discoverable." Id. (citation and punctuation omitted). The trial court must determine "whether the requested discovery is relevant and material, but when parties seek discovery of unprivileged but sensitive materials, the trial court must balance the requesting party's specific need for the material against the harm that would result by its disclosure." Id. at 52-53 (1) (citation and punctuation omitted). It is a trial court's obligation "to apply this balancing test to determine whether discovery of the requested sensitive materials would subject the producing party to 'annoyance, embarrassment, oppression, or

12

undue burden or expense.'" Id. at 53 (1) (citation and punctuation omitted). And a party's request for information should be denied when the request is overly broad. Id. Finally, "where pre-trial discovery of the producing party's financial resources is authorized, the scope of such should be restricted to the extent necessary to prevent an unreasonable intrusion into the party's privacy." Id. (citation and punctuation omitted).

(a) In its order granting the defendants' motion to compel Omni, the trial court ordered Omni to, among other things, "[f]ully and completely" respond to the defendants' non-party requests within 20 days of the order. The order also included the following confidentiality and redaction instructions:

> In making its production, Omni shall redact the names and any personal identifying information (such as email addresses, home addresses, telephone numbers, or social security numbers) of any other plaintiff/patient from its file materials. Omni may *not* redact any other information, including CPT codes or dollar values associated with any bills that it has purchased or negotiated. Omni is also instructed not to redact the names or email addresses of any case managers, runners, law firms, or other intermediaries from its production.

With regard to Defendants' Request No. 21,[8] Omni's production is to be limited to records touching (1) Plaintiff's medical providers whose debt Omni has purchased *in this case* (including AHI, Northlake Anesthesia, Benchmark Rehabilitation, and potentially Barbour Orthopedics and/or its surgery center) or (2) Plaintiff's counsel in this case . . . Omni's production obligation is also limited to a time period starting three years prior to the entry of this order, and is geographically limited to the State of Georgia.

Defendants and their counsel are instructed that any billing or financial information is to be held confidential. "Billing or financial information" includes any document that identifies a dollar value or the cost or pricing of the goods or services Omni has purchased as accounts receivable. Omni's "billing or financial information" would not include patient referrals or referral totals, as same are not privileged under Georgia law.

Defendants may not publish or distribute Omni's billing or financial information, except that Defendants and/or their counsel will be permitted to provide any part of Omni's billing or financial production to any other Court or judge on an *in camera* basis as reasonably necessary. Defendants will not be required to return or

---

[8] This request sought: "In the last 36 months, all documents, correspondence and/or emails relating to any lawsuits in which your organization has accepted *less* from a plaintiff than it was entitled to collect, based on the billed charges or loans extended to that plaintiff[.]"

destroy Omni's billing or financial information. Defendants may share Omni's billing or financial information with any expert witness or consultant for purposes of this case, or with Defendants' insurer, but any such expert or insurer will also be bound by this order. Defendants may use Omni's billing or financial information in any deposition, hearing, or other proceeding in connection with this case; but if Defendants choose to do so, the sections of any transcripts or other records of such a proceeding dealing with Omni's billing or financial information must also be kept confidential, and are subject to this order.

Should this case reach trial, this Court will make decisions as appropriate at that time regarding which materials will remain sealed and which will not. (emphasis in original.)

(b) First, Omni argues that the trial court erred in granting the defendants' motion to compel against Omni with respect to Omni's pricing information, which it contends is not relevant to show bias, intent, or motive. We disagree.

We review a trial court's ruling on a motion to compel discovery against a non-party for abuse of discretion. See, e.g., *Ortho Sport & Spine Physicians*, 352 Ga. App. at 215 (2); see *Bethune*, 363 Ga. App. at 276 (2) ("We will not interfere with the trial court's discovery decisions absent a clear abuse of discretion.") (citation and punctuation omitted).

Here, Omni contends that the requested financial documents related to AHI, Benchmark, and Northlake are not relevant to the bias, intent, and motive of the medical provider in providing medical services. In particular, Omni argues that "AHI takes medical images such as x-rays and MRIs. The images are produced by machines, which of course have no bias and cannot be called to testify. The images are then read by independent-contractor radiologists. An image shows what it shows and, naturally, cannot be called to testify at trial." (citations and emphasis omitted.) But, the defendants do not contend that these machines are biased, but, instead, question whether the care provided by AHI was proper at all. Moreover, documents relevant to the use of these devices and images may be relevant to show bias, intent, or motive of someone else involved in Herrera's care, such as the independent-contractor radiologists referenced by Omni. For the same reasons, we reject Omni's contentions that "Benchmark and Northlake also do not provide services that are relevant to issues in the litigation, including causation. Benchmark provides physical therapy pursuant to a third-party doctor's order and direction" and "[t]here is simply no way that providing a surgery patient with anesthesia is relevant to causation." As set forth above, the defendants seek to prove that Omni and its medical prover partners are

"building claims" based upon "phantom damages," and the pricing information is relevant to this issue.

Our conclusion here is in line with our recent opinion in *Medernix*, 372 Ga. App. 48. In *Medernix*, the defendants served discovery on a non-party medical practice that provided treatment to the plaintiff under a letter of protection. Id. at 48. The discovery requests sought communications and contracts between the medical practice, the plaintiff's attorneys, and any litigation funding companies involved in the case. Id. at 49. On appeal, we recognized that the trial court correctly determined that evidence that the plaintiff's counsel had a close relationship with and history of making referrals to the plaintiff's treating physician can be relevant to show the bias of that physician. Id. at 54-55 (1).

Here, as in *Medernix*, the pricing information is relevant to bias, intent, or motive. We do not see a material difference in the potential bias of Herrera's medical providers simply because Omni now holds Herrera's receivables. Documents showing that Herrera's counsel have close relationships with certain medical providers who may profit by selling their receivables to Omni, who may itself also profit by collecting after a successful lawsuit may show the bias, intent, or motive of these medical

17

providers. See *Medernix*, 372 Ga. App. at 54 (1); *Canada v. Shropshire*, 232 Ga. App 341, 342 (501 SE2d 860) (1998) (the trial court did not err in admitting evidence of a close relationship between the plaintiff's doctor and the plaintiff and the doctor and plaintiff's counsel); OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury.").

We also reject Omni's argument that the low sums of the medical receivables undermines the argument that there is bias. The defendants argue that "[i]f a 'partnering' lien doctor is indeed receiving a string of 'client referrals' from Omni explicitly to 'build valuable legal claims' and thereby 'increase cash flow,' (as Omni's website states) then such a doctor is beholden to Omni for more business." So, while the amount of any given receivable may be low, the defendants seek to show bias due to this ongoing model.

(c) Omni also argues that the requested financial documents showing amounts paid to purchase Herrera's medical receivables are not relevant for the purpose of proving the reasonableness of his medical bills. Specifically, Omni contends that this is because the purchase price of the receivable does not reflect the reasonable value

18

of the services at the time they are provided, since the amount paid for a receivable includes the risk, time, and cost of collection. Omni also argues that Herrera's bills themselves, in addition to expert witness testimony would be sufficient to show whether the bills were reasonable. However, as we ruled in *Medernix*, "[i]t is true that to recover medical expenses in a personal injury action, a plaintiff . . . must show that the expenses arose from the injury sustained and were reasonable and necessary." *Medernix*, 372 Ga. App. at 53 (1). And, here, both plaintiffs have sought to recover "the full value of [their] past and future medical expenses." This amount includes the amount eventually paid to the lien-holder here, Omni. As we said in *Medernix*, the amount "charged, wrote off, adjusted, or accepted as payment in full from other patients for the same types of treatment at the same medical facility during the same general time period as [the plaintiff] may have some relevance – 'particularly in the broad discovery sense' – to the reasonableness and necessity of the charges for [the plaintiff's] care and thus be discoverable. Id. at 54 (1) (emphasis omitted).

(d) Omni argues next that the trial court committed reversible error in granting the defendants' motion to compel against Omni because the requested discovery is

overbroad and unduly burdensome, not relevant, harassing, and is being sought for use in other cases or future cases.

(i) First, Omni contends that twelve of the thirty-one requests the defendants served on Omni are not limited to Herrera and "thus are overbroad and not relevant to the subject matter involved in the pending action."[9] (punctuation omitted.) As we held in Divisions 3 (b) and (c), supra, requests for documents concerning the amounts paid are relevant to the pending action.

And Omni's statement that these requests are overbroad solely because they are not relevant to the subject matter involved in this pending action conflates relevance with overbreadth. While we have in the past ruled that requests seeking the production of documents on matters outside of a lawsuit have been overbroad, this is not such a case. For example, in *Medernix*, we ruled that discovery requests were overbroad that sought "a spreadsheet that would list, for every . . . patient, the amount billed for each visit or procedure at every [of the provider's locations], categorized by [medical billing] code; the amount written-off, adjusted, or accepted in satisfaction for each such bill; the payor of each bill; and information about who referred each patient

---

[9] Omni identifies those as requests for production numbers 7, 11, 12, 13, 15, 17, 18, 20, 21, 23, 25, and 26.

to [the provider]." *Medernix*, 372 Ga. App. at 49. Similarly, in *Southern Outdoor Promotions, Inc. v. Nat. Banner Co., Inc.*, 215 Ga. App. 133 (449 SE2d 684) (1994), we held that a trial court abused its discretion in ordering the production of a company's balance sheet along with "all supporting schedules, ledgers, *etc.*" because by requiring the production of "*etc.*," the demand did not inform the appellant with adequate specificity what he was required to produce and was also not reasonably restricted to the disclosure of relevant matters in issue at trial. Id. at 135 (4) (emphasis in original). We did not hold, however, that the request for the company's balance sheet itself was overbroad. Id. Moreover, because the requests seek the disclosure of documents relevant to issues at trial such as the reasonableness of damages and bias, they are not overbroad on the basis of not being reasonably restricted to the disclosure of relevant matters in issue at trial.

(ii) Omni additionally argues that four requests are overbroad for other, specific reasons. The defendants' request for production number 11 seeks "[c]opies of any and all agreements between your organization and any of [Herrera's] medical providers[.]" Omni complains that while it has contracts with some of the other medical providers for Herrera, it did not purchase receivables for them in this case and

21

that this request is not reasonably restricted to relevant matters in issue at trial. In support of this proposition, Omni again relies on *Southern Outdoor Promotions*, 215 Ga. at 133. Here, unlike in that case, the request was limited to only "agreements" between Omni and Herrera's medical providers. This request is more narrow than the one in *Southern Outdoor Promotions*, and the trial court did not abuse its discretion in ordering Omni to produce these documents.

The defendants' request for production number 21 sought: "[i]n the last 36 months, all documents, correspondence and/or emails relating to any lawsuits in which your organization has accepted *less* from a plaintiff than it was entitled to collect, based on the billed charges or loans extended to that plaintiff." (emphasis in original.) In its order, the trial court limited

> Omni's production . . . to records touching (1) [Herrera's] medical providers whose debt Omni has purchased *in this case* (including AHI, Northlake Anesthesia, Benchmark Rehabilitation, and potentially Barbour Orthopedics and/or its surgery center) or (2) [Herrera's] counsel in this case . . . Omni's production obligation is also limited to a time period starting three years prior to the entry of this order, and is geographically limited to the State of Georgia.

(emphasis in original.)

Omni argues that this is an impossible ask. But this request seeks information that may be relevant to damages, and the trial court's order limits the scope to documents, correspondence and/or emails, within the last 36 months, involving Omni, AHI, Northlake, and Herrera's attorneys. The trial court did not abuse its discretion in ordering the production of these documents. See *Leonard Bros. Trucking Co. v. Crymes Transports, Inc.*, 123 Ga. App. 424, 425 (1) (181 SE2d 296) (1971) (trial court did not abuse its discretion by ordering the production of documents which were limited in scope and time); *Mead Corp. v. Masterack*, 243 Ga. 213, 214 (253 SE2d 164) (1979) (trial court abused its discretion by granting order limiting discovery).

The defendants' request for production number 19 sought: "[a]ll documents, correspondence and/or emails with any person or entity related to [Herrera]." Omni contends that "[i]t is impossible to determine who exactly Omni is supposed to search for in its company-wide correspondence to respond to this request, as [defendants] apparently expect Omni to simply guess as to what persons and entities may be "related" to [Herrera[.]" We agree. See *Southern Outdoor Promotions, Inc.*, 215 Ga. App. at 135 (2) ("[t]he discovery notice should be specific enough in its demands to relate to the documents sought to the questions at issue.") (citation and punctuation

omitted). We vacate this portion of the trial court's order and remand for the trial court to make a more specific direction to Omni about who or what is "related" to Herrera. See *Medernix*, 372 Ga. App. at 56 (1) (vacating portion of trial court's order and remanding for trial court to determine whether a more limited production can be made consistent with the opinion).

> In request for production number 15, the defendants sought:

> [c]opies of all documents, correspondence and/or emails related to the relationship and agreement between your organization and all medical providers that provided medical treatment to [Herrera]. This request includes any documents, correspondence and/or emails regarding entertainment, parties, marketing, solicitation, recruitment, gifts and/or communications involving your organization and any medical provider who has provided treatment to [Herrera.]

This request is limited to all documents, correspondence, related to the relationship between Omni and Herrera's medical providers. Herrera's medical providers is a finite group, and the types of documents sought is narrowly defined. This request is not overbroad. See *Leonard Bros. Trucking Co.*, 123 Ga. App. at 425 (1); *Mead Corp.*, 243 Ga. at 214.

(e) Omni next argues that the trial court erred in granting the defendants'

motion to compel against Omni because Omni's pricing information constitutes a

trade secret and the confidentiality provisions outlined in the order do not sufficiently

protect Omni's legitimate interests in maintaining the secrecy of the proprietary

business information.

A trial court may grant a protective order and prohibit or limit certain requested

discovery, including trade secrets, for "good cause shown." OCGA § 9-11-26 (c) (7).

The movant bears the burden of showing its entitlement to the order." *Medernix*, 372

Ga. at 53 (1). A trial court's ruling on a motion for protective order generally lies

within the sound discretion of the trial court, and we review a trial court's ruling on

such a motion for an abuse of that discretion. *Gen. Motors, LLC v. Buchanan*, 313 Ga.

811, 815 (2) (a) (874 SE2d 52) (2022).

OCGA § 10-1-761 (4) defines "trade secrets" as

information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or

25

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Under OCGA § 10-1-765, "[i]n an action under this article, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." We know of no reported Georgia case construing this statute. But the statute on its face contemplates that trade secrets are discoverable as long as trade secrets can be preserved by reasonable means.

Omni also argues that the trial court's ruling that "Defendants may not publish or distribute Omni's billing or financial information, except that Defendants and/or their counsel will be permitted to provide any part of Omni's billing or financial production to any other Court or judge on an in camera basis as reasonably necessary," permits the defendants to use this pricing information in future lawsuits.

We read this paragraph, however, as permitting the defendants to provide this information to any other court or judge in connection with this lawsuit, as the language in the order demonstrates that the trial court was focused on the lawsuits filed against the defendants. See *Spirnak v. Meadows*, 355 Ga. App. 857, 873 (7) (d) (844 SE2d 482) (2020) (although the trial court's order was not specific, its language demonstrated the court's focus). We reverse the trial court's ruling to the extent that it states that the defendants may use this pricing information in other lawsuits. See *Danforth v. Apple Inc.*, 294 Ga. 890, 898 (2) (757 SE2d 96) (2014) (affirming the trial court's ruling to the extent that it ruled that the evidence supports certain provisions of an injunction under OCGA § 34-1-7).[10]

4. In Case Number A25A1411, Omni next argues that the order granting the defendants' motion to compel against AHI requires AHI to produce, among other things, the contract between Omni and AHI, which contains Omni's trade secret pricing information, but without the confidentiality provisions in the order granting the defendants' motion to compel against Omni for the same documents. Likewise,

---

[10] Because of our ruling in this division, we likewise reject Omni's trade secrets argument in case number A25A1452, Northlake's trade secrets argument in case numbers A25A1473 and A25A1474, and AHI's trade secrets argument in case number A25A1475.

Omni argues that the order denying Northlake's motion for protective order also requires Northlake to produce its contract with Omni without the confidentiality provisions in the Omni order to which those documents are subject. We disagree with Omni because we interpret the order's confidentiality provisions broadly. In its order, the trial court stated that "*Defendants and their counsel are instructed that any billing or financial information is to be held confidential.* 'Billing or financial information' includes any document that identifies a dollar value or the cost or pricing of the goods or services Omni has purchased as accounts receivable. Omni's 'billing or financial information' would not include patient referrals or referral totals, as same are not privileged under Georgia law." (emphasis added). Thus, the confidentiality provisions in the order bind the defendants as it relates to documents that are produced by the other non-parties, and the trial court did not issue inconsistent orders.[11]

5. In Case Number A25A1475, AHI first argues that the trial court erred in granting the defendants' motion to compel its production without first trying to

---

[11] Because of our ruling in this division, we likewise reject Omni's argument that the discovery orders are inconsistent in case number A25A1452, Northlake's arguments that the discovery orders are inconsistent in case numbers A25A1473 and A25A1474, and AHI's argument that the discovery orders are inconsistent in A25A1475.

resolve the discovery dispute pursuant to Georgia Uniform Superior Court Rule 6.4 (B) ("Rule 6.4 (B)"). We disagree.

Rule 6.4 (B) states:

Prior to filing a motion seeking resolution of a discovery dispute, counsel for the moving party shall confer with counsel for the opposing party and any objecting person or entity in a good faith effort to resolve the matters involved. At the time of filing the motion, counsel shall also file a statement certifying that such conference has occurred and that the effort to resolve by agreement the issues raised failed. This rule also applies to motions to quash, motions for protective order and cases where no discovery has been provided.

After receiving the defendants' discovery requests, AHI produced documents to the defendants without written responses or objections. In their motion to compel AHI, the defendants represented that they served a letter on AHI pursuant to Rule 6.4 (B) and invited AHI to have its counsel contact them to confer. According to the defendants' motion, AHI never responded. This was sufficient for the defendants to comply with Rule 6.4 (B). See *Gropper v. STO Corp.*, 276 Ga. App. 272, 277 (3) (623 SE2d 175) (2005) ("[t]here is no requirement in [Rule 6.4 (B)] that counsel for the movant make more than one attempt to resolve the discovery matter"); *Fisher v. Bd.*

*of Commrs. of Douglas County*, 200 Ga. App. 353, 354 (2) (c) (408 SE2d 120) (1991) (stating that where a copy of the Rule 6.4 (B) letter was filed in support of a motion to compel discovery, "[t]his identification would be the equivalent to counsel's 'stating in his place' as an officer of the court that the letter was sent. Though the better practice would be for counsel for the moving party to identify by sworn affidavit any written communications to the opposing counsel concerning the failure to respond to discovery, we cannot say that the motion in this case was defective."). We find no abuse of discretion in the trial court granting the motion to compel without the defendants' conferring with AHI.

6. In Case Number A25A1475, AHI also argues that the trial court failed to analyze relevance, burden, or expense when entering its order. As set forth in Division 3, supra, "[w]here parties seek discovery of unprivileged but sensitive materials, the trial court must balance the requesting party's specific need for the material against the harm that would result by its disclosure." *Medernix, LLC*, 372 Ga. App. at 52-53 (1) (citation and punctuation omitted).

Here, AHI filed both a response and a second response in opposition to the motion to compel. And while Omni did not file a response in opposition to the motion

to compel AHI, it filed a response and a sur-reply in opposition to the motion to compel Omni filed by the defendants. In the filings referenced above, AHI argued that the defendants' discovery requests would burden AHI and the privacy rights of their other patients. Omni argued that the requests served on it were overly burdensome, harassing in nature, and a "fishing expedition." Northlake also moved for a protective order, arguing that the document requests served on it were not reasonably calculated to lead to the discovery of admissible evidence and that they were not relevant to the subject matter of the case.

The trial court's order granting the defendants' motion to compel against AHI expressly states that it "considered the Non-*parties'* and Defendants' briefing and other filings, the exhibits, as well as the facts of the case and the law." (Emphasis added.) Thus, it considered more than just the arguments made by AHI, and we know of no authority requiring the trial court to reduce its analysis to writing. Moreover, the order granting the motion to compel against Omni was entered in the same case as the order entered against AHI. That order shows that the trial court considered Omni's privacy interests in its pricing information as well as the privacy interests of other

plaintiffs or patients from Omni's files. Accordingly, AHI has not shown that the trial court abused its discretion by failing to balance the parties' interests.

7. In Case Number A25A1475, AHI next argues that the trial court's order lacks sufficient detail for compliance because it omits any specific reference to which of the defendants' 18 non-party requests for production to AHI should be supplemented. But although AHI produced some documents, it made no objections to the discovery requests and its written "response" merely stated: "[t]his patient went through a Lien Company for funding. Please contact *Omni Healthcare* to obtain the billing records[,]" and provided a name and contact information for someone at Omni. The trial court's order directs "AHI [to] make a diligent, good faith search of its electronic storage systems and paper files, and shall thereafter produce complete *responses* to each of Defendants' non-party discovery requests" and states that "AHI is only required to produce documents that relate to [Herrera] or this case, but it is cautioned to interpret any questions regarding such relationship broadly and to make a production in good faith[.]" (Emphasis added.) The trial court's direction is clear that Omni must provide complete *responses* to the discovery as well as to make a good faith production of documents.

*Conclusion*

Upon remand, the trial court should vacate the portion of its order entered in Herrera's lawsuit to make a more specific direction to Omni about who or what is "related" to Herrera. We also reverse the trial court's ruling in Herrera's lawsuit to the extent that it can be construed that the defendants may use Omni's pricing information in other lawsuits. We affirm the trial court's remaining rulings.

*Judgments in A25A1452, A25A1473, A25A1474, and A25A1475 affirmed and judgment in A25A1411 affirmed in part, reversed in part, and vacated in part, and remanded. Doyle, P. J., and Markle, J., concur.*